Argued January 29, affirmed March 2, 1915.

## SMITH *v.* JEFFERSON.

(146 Pac. 809.)

### Municipal Corporations—Public Improvements—Adoption of Plans.

1. Where plans for a street improvement were read and approved at a council meeting, and the resolution and notices of intention to do the work and the resolution providing for bids all referred to the plans and specifications as on file and having been adopted, the action of the council must be construed as an adoption of the plans and specifications, although they were adopted along with other resolutions.

### Municipal Corporations—Public Improvements—Recorder—"De Facto Officer"—"Usurper."

2. Where a councilman was appointed by a mayor to fill the office of recorder and he acted without his title being questioned until the council elected another, who took the oath of office, both such persons must be treated as *de facto* officers, notwithstanding the failure of the first to take and the latter to file the oath of office, for a *"de facto* officer" is one having possession of an office and performing the duties thereof under color of right, without being actually qualified, while a "usurper" is one who has neither lawful title nor color of right.

### Municipal Corporations—De Facto Officers—Rights of Taxpayers.

3. Taxpayers cannot question the acts of a *de facto* city recorder.
   [As to who are *de facto* officers, see note in 19 Am. Dec. 63.]

### Municipal Corporations—Plans—Memorandum—Necessity.

4. The indorsement of a city recorder of the filing of plans and specifications for a street improvement is a memorandum not essential to the validity of assessments.

### Evidence—Judicial Notice—Census Reports.

5. The Supreme Court will take judicial notice of the population of a city as declared by the census.

**Municipal Corporations—Public Improvements—Assessments.**

6. That the recorder of a small city did not maintain an office at the city hall, and kept all plans and specifications for an improvement at his usual place of business, is no ground to invalidate the assessment.

**Municipal Corporations—Assessments—Validity.**

7. An assessment for a public improvement cannot be enforced where the council did not acquire jurisdiction because the necessary notices were not given.

**Municipal Corporations—Public Improvements—Notice.**

8. Where the notice of intention to improve a street described, the portion to be improved, and specified the pavement as a gravel concrete pavement 48 feet wide and 6 inches deep, and at the same time referred to the plans and specifications on file in the recorder's office, the notice was sufficient, and the assessment will be upheld.

[As to mode of procedure governing municipal council or other board when exercising judicial functions, see note in Ann. Cas. 1915B, 1083.]

**Municipal Corporations—Public Improvements—Notice.**

9. A notice of intention to improve a street, signed by the recorder as such, to which the city seal was attached, is sufficient, when taken with the statement that it was posted by order of the council.

**Municipal Corporations—Public Improvements—Notice — Sufficiency.**

10. A notice for the improvement of a street, headed, "To Whom It may Concern," is sufficient, where the charter provided no form and the body of the notice gave all necessary information.

**Municipal Corporations—Notice—Sufficiency.**

11. Notices for the improvement of a street, which referred to it both as First Street and also Main Street, are sufficient where the street was dedicated as Main Street but was known also as First Street.

**Municipal Corporations—Public Improvements—Notice.**

12. Where city charter provided that abutting owners should have an opportunity, within a specified and reasonable time, to construct the improvement and if they failed it should be constructed by the city, the abutters to bear one half of the expense, the fact that notices for an improvement allowed abutters only 10 days in which to do the work will not avoid the assessment, where it did not appear that any of them desired to take advantage of the privilege.

**Municipal Corporations—Improvements—Posting of Notices.**

13. Where the charter did not provide any form for proof of posting, proof that notices were posted at three public places in the city, supplemented by the recorded finding of the council that they were posted as required by law, is sufficient to support the assessment.

**Municipal Corporations—Improvements—Assessments.**

14. Where the assessments against plaintiff's property were neither enlarged nor diminished because the city paid the expenses of improving street intersections, plaintiffs cannot complain that abutters at street intersections were not assessed.

Municipal Corporations—Public Improvements—Assessments.

15. Where a city charter provided that each lot abutting on a street should be liable for the full cost of the improvement upon the half abutting upon it, and that the council should assess on each lot its proportionate share of the cost of the improvement, abutting owners cannot complain that the assessment for the improvement of a street was made according to the front-foot rule.

Municipal Corporations—Improvements—Pledge of City's Credit.

16. The council of a city ordered a street improvement which it was estimated would cost $5,500. One half of the cost was to be paid out of the general fund. When the improvement was ordered, the treasurer had $1,600 in the general fund and practically no indebtedness. At the time of trial only about $200 was unpaid on the city's part of the improvement, and .the treasurer had in the general fund $345, with no outstanding warrants. *Held,* that in ordering the improvement the council did not violate that provision of the charter empowering them to loan the credit of the city to an amount not exceeding $1,000.

Municipal Corporations—Public Improvements—Assessments.

17. An assessment for a street improvement is not void where the council approved and accepted the work, though the street committee did not sign their formal report until some time after the work had been completed, and the commissioner thereafter delayed giving his certificate for several months.

Municipal Corporations—Street Improvements—Assessments.

18. An abutter cannot complain that the assessment on land which he owned was made not against him, but against the apparent record owner.

Municipal Corporations—Assessments—Actions—Joinder.

19. Where a number of abutters joined in a suit to prevent the enforcement of an assessment for street improvements, relief can be granted only on a ground common to all of them, and hence the assessment cannot be declared void because only some of the abutters were assessed for a distance of more than 100 feet, although the charter provided that assessments should run only 100 feet back from the street.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2. Statement by MR. JUSTICE HARRIS.

This is a suit commenced by C. M. Smith and Joseph G. Fontaine, partners doing business at Jefferson, Oregon, under the firm name and style of Smith & Fontaine, W. L. Jones, Guy E. Eades, Lena McFarlane and Zora Fredericksen, the only heirs of the estate of S. R. Eades, deceased, C. O. Morrill, H. L.

Ward and S. P. Ward, against the City of Jefferson, Oregon, and Frank Reeves, marshal of the City of Jefferson, Oregon, for the purpose of preventing the collection of certain assessments levied on account of a street improvement. Main Street runs north and south, and the other streets mentioned herein extend east and west. The improvement complained of covers two blocks along Main Street from a point 9 feet north of the south line of Hazel Street south to a point 9 feet south of the north line of Ferry Street. Union Street is next south of Hazel Street and runs to and ends with the east line of Main Street. G. C. Mason and M. E. Mason own property abutting on the west line of Main Street and opposite the end of Union Street.

A petition for the improvement of Main Street having been filed, the council on January 20, 1913, instructed the street committee to prepare a resolution for the improvement. Thereafter, on February 3d, the council adopted resolution No. 15, which declared the intention of the council to cause the improvement to be made. This resolution fixed February 17th as the time for hearing objections, and further directed the city recorder to post notices. The recorder on February 17th made proof of posting, to the effect that three copies of the notice were posted in the City of Jefferson in three public places, naming the places, and that such notices remained posted for 10 days. The notices so posted stated that the council deemed it necessary to improve and that it proposed to improve "First Street (known also as Main Street)"; described the portion of the street intended to be improved; recited the kind, width, and depth of the pavement; referred to the grading as being such "as may be necessary to make such improvement"; stated that

the improvement was "to be made in accordance with the plans and specifications for the same now on file in the office of the city recorder"; and that objections would be heard February 17th.

No remonstrances having been made, the council on February 17th adopted resolution No. 17, which directed that "First Street (known also as Main Street)" be improved as specified in the notices of intention; that one half the expense be paid by the abutting property and the remaining half by the city, fixed 10 days as the time within which the improvement should be made if undertaken by the property owners, and directed the recorder to post notices in three public places. Proof of posting these notices was made March 3d, showing that three notices were posted in the City of Jefferson in three public places, naming them; that the notices were posted February 19th and remained posted for 10 days. The last-mentioned notices gave the information that the council had determined to improve the described two blocks on "Main Street (known also as First Street)"; that one half the expense was to be apportioned to the abutting property and the other half to the city; that the city would pay all the cost at street intersections; that property owners had 10 days from February 19th in which to do the work, and if not so done, the council would proceed with the improvement at the cost of the abutting property.

The council on March 3d adopted resolution No. 18, asking for bids, and notice calling for bids was published for two weeks in a newspaper. At the instance of the council a contract for the improvement was signed by the mayor and recorder and thereafter, on April 14th, this contract was accepted by the council.

On May 21st the council, by resolution, determined $5,573 to be the cost of the improvement, June 2d was set as the time for assessing the abutting property with its proportionate share of the expense and for hearing remonstrances, and the recorder was directed to post notices in three public places. Proof of posting was made, and it appears that notices were posted on May 22d and remained for 10 days in the City of Jefferson, in three public places, naming them. Resolution No. 20 was adopted June 2d, and thereby the sum of $2,465.55 was ascertained to be the amount to be assessed to the abutting property, the portion to be paid by each parcel of ground was determined and assessed, and the recorder entered such assessments in the docket of city liens.

The plaintiffs, who are owners of property abutting the improvement, refused to pay and seek to enjoin the city from collecting the assessments levied against their properties. From a decree dismissing the complaint the plaintiffs appeal. The charter of Jefferson is found in Special Laws 1905, page 1065.

AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Alva O. Condit* and *Mr. George G. Bingham.*

For respondents there was a brief with oral arguments by *Mr. James G. Heltzel* and *Mr. Woodson T. Slater.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The plaintiffs have urged numerous objections. It is contended that no plans or specifications were

adopted by the council or filed with the city recorder. The plans and specifications received in evidence were identified and clearly shown to have been read and approved at the council meeting held February 3d. The resolution and posted notices of intention to do the work, the resolution providing for bids, the pub-lished notice for bids, and the resolution levying an assessment for the work, all directly refer to the plans and specifications as being on file or as having been adopted. The minutes of the council do not disclose any separate entry showing adoption by some motion which embraced no other subject. Although the charter does not, in express terms, require the adoption of plans and specifications, nevertheless, assuming that such action was essential, it would be sufficient if the council did in fact adopt plans and specifications, even though other matters were at the same time considered and approved. It clearly appears that the plans and specifications, referred to in the resolutions, notices and minutes, guided every step taken by the council and governed all that was done in connection with the work. No other plans or specifications were used or even prepared. Resolution No. 15, adopted February 3d, was the first step taken by the council, and that resolution recited that:

"Said improvement to be made in accordance with the plans and specifications for the same now on file in the office of the city recorder of said city."

The action of the council, together with what followed, was an adoption of the plans and specifications: *Stockton* v. *Skinner,* 53 Cal. 85.

2, 3. S. E. Roland, occupied the position of recorder until about April 1, 1913, when he resigned, and was succeeded by a member of the council, J. J. Denson,

who was appointed by the mayor. Denson did not resign as councilman, and there is no record of his appointment, although he assumed and discharged all the duties of recorder. The council, on April 14th, elected E. E. Howell, who on April 16th subscribed to an oath of office before J. J. Denson "(acting) recorder of the City of Jefferson," and thereafter Howell served as recorder. By the terms of Section 28 the charter provides that a vacancy in office shall be filled by appointment made by a majority of the council, and Section 24 requires every officer to take and file with the recorder an oath of office. The plaintiffs take the position that Denson was not at any time the city recorder because the appointment made by the mayor was void, and that it also follows that Howell was not clothed with the authority of that office because the oath of office was administered by a person who was not the recorder. While not essentially a determining factor in the decision, it is well to bear in mind that the resolution manifesting the intention of the council to make the improvement and the resolution declaring that the work would be done were both adopted and the notices thereof given during the incumbency of Roland, whose right to act as recorder is not questioned. If the acts of Denson and Howell can be said to have been done by *de facto* officers, then such acts were valid and binding as to these plaintiffs: *Hamlin* v. *Kassafer,* 15 Or. 456 (15 Pac. 778, 3 Am. St. Rep 176) ; *Graham* v. *School Dist.,* 33 Or. 270 (54 Pac. 185) ; *State ex inf.* v. *Holman,* 73 Or. 18 (144 Pac. 429). The records show, as disclosed by the minutes of the council proceedings, that while Denson acted as recorder he did so with the full knowledge and consent of the council, which is the lawful appointing power, and no person made any objection. Stated broadly,

a *de facto* officer is one who has the possession of an office and performs the duties thereof under color of right, without being actually qualified in law so to act. A usurper is one who has neither lawful title nor color of right. The appointment made by the mayor and the acquiescence of the council furnished the element of color of right, and therefore Denson was not a usurper; and such appointment, even though made without authority, when followed by the actual performance of all the duties of the office, supplies the necessary color of title so as to render Denson a *de facto* recorder: *People* v. *Roberts,* 6 Cal. 214; *Ray* v. *Murdock,* 36 Miss. 692; *Mallett* v. *Uncle Sam Gold M. Co.,* 1 Nev. 188 (90 Am. Dec. 484) ; *McLean* v. *State,* 8 Heisk. (Tenn.) 22; *In re Ah Lee,* 5 Fed. 899 (6 Saw. 410) ; *Lang* v. *Bugonne,* 74 N. J. Law, 455 (68 Atl. 90, 122 Am. St. Rep. 391, 12 Ann. Cas. 961, 15 L. R. A. (N. S.) 93). The acts done by Denson were therefore the acts of the city recorder, and the oath of office administered by Denson to Howell was sufficient. In this connection it is also claimed that Howell did not file his oath of office until July. The evidence shows that Howell subscribed to the oath of office April 16th, and that the writing was placed with the files and papers of the office. The failure of Denson or the neglect of Howell to take and file an oath of office did not prevent these persons from becoming *de facto* officers so far as these plaintiffs are concerned: *Murphy* v. *Shepard,* 52 Ark. 356 (12 S. W. 707) ; *Holt County* v. *Scott,* 53 Neb. 176 (73 N. W. 681) ; *Rosell* v. *Neptune City Board of Education,* 68 N. J. Law, 498 (53 Atl. 398) ; *State* v. *Perkins,* 24 N. J. Law 409; *Gregg Tp.* v. *Jamison,* 55 Pa. 468.

4–6. The plans and specifications were not formally marked and indorsed as filed, but they were at all

times in the custody of the recorder as a part of the
files of his office. The recorder did not maintain an
office at the city hall, and, except during council meet-
ings, the minute-book, plans and specifications were
kept most of the time at a store where the recorder
was engaged in business. The plans and specifica-
tions were delivered to the recorder with the inten-
tion that they constitute a part of the files of the office,
and are referred to by various resolutions and notices
as being filed. The indorsement of the recorder only
serves as a memorandum and as evidence of the time
of filing, but such memorandum is not essential: *Co-
nant's Estate,* 43 Or. 530 (73 Pac. 1018); *Bade* v. *Hib-
berd,* 50 Or. 504 (93 Pac. 364); *Hart* v. *Prather,* 61
Or. 10 (119 Pac. 489); *State ex rel.* v. *Astoria,* 63 Or.
175 (126 Pac. 999); *Houghton* v. *Burnham,* 22 Wis. 301.
It is not shown that plaintiffs were injured by reason
of the recorder having the records at his place of busi-
ness instead of at the city hall. The court has a right
to take judicial notice of the population of the City
of Jefferson as declared by the census: *Stratton* v.
*Oregon City,* 35 Or. 409 (60 Pac. 905). It is not usual
for a municipality of the size of Jefferson to require
its recorder at all times to be in an office in the city
hall; but it is fair to presume that the recorder and
his place of business were known to all persons in
Jefferson, and as disclosed by the record there was at
no time any difficulty in finding the recorder or the
files of his office.

7, 8. It is next claimed that the notices of intention
to make the improvement and to levy an assessment
were not sufficient, that a portion of the abutting prop-
erty was not assessed, and that a statement of the
assessments was never entered in the docket of city
liens. The charter in Section 71 provides that no im-

provement of any street can be made without seven days' notice given by one publication in a newspaper, or by posting notices in three public places in the city; and by the provisions of Section 72 the notice must be given by the recorder by order of the council, and must specify with convenient certainty the street or part thereof proposed to be improved, the kind of improvement which is proposed to be made, and the time when the council will hear and determine objections and remonstrances thereto.   After hearing any objections that may be made the council shall determine by resolution whether or not the improvement specified in said notice shall be made: Section 73.   It is then provided in Section 74 that the council shall direct the improvement to be made by the owners of the abutting property within a specified and reasonable time, and if such owners fail to make the improvement within the time fixed the council may then proceed with the work and assess the abutting property for its proportionate share of the cost as provided in Section 75:

"Provided, that for all such improvement of streets the council shall pay out of the general fund one half the cost of improving and grading."

Section 75 directs that when the total cost of the improvement has been ascertained, the city recorder shall then give 10 days' notice of the fact that the council is about to assess and determine the proportionate share assessable to each portion of the abutting property—

"which notice may either be given by one publication in any newspaper published in the City of Jefferson, or by posting notices in three public places in said city, which notices shall specify the time at which the council will make such assessment."

If the council did not acquire jurisdiction because the necessary notices were not given, then the assessment levied cannot be collected: *Dyer* v. *Bandon,* 68 Or. 406 (136 Pac. 652) ; *Jones* v. *Salem,* 63 Or. 126 (123 Pac. 1096). The notice of intention, by the express provisions of the charter, must specify with convenient certainty the part of the street proposed to be improved, the kind of improvement proposed to be made, and the time when the council will hear and determine objections. The notice of intention described the portion of the street as being:

"First Street (known also as Main Street) from a point 9 feet north of the south line of Hazel Street in said city to a point 9 feet south of the north line of Ferry Street in said city."

The kind of improvement is specified as:

"Gravel concrete pavement, 48 feet wide and 6 inches deep, and by grading said portion of said First Street, said improvement to be in accordance with the plans and specifications for the same now on file in the office of city recorder of said city."

The time for hearing objections was fixed for Monday, February 17th, at 8 o'clock P. M. No more definite description of the street could be given, the kind of the improvement is stated, and the details of the specified kind of improvement were to be found in the plans and specifications which are expressly referred to in the notices, and had been adopted and were on file with the recorder. The specifications state that they are "for concrete pavement on Main Street in the City of Jefferson," and they describe the kind of work to be done, as well as how that work shall be done. The plans consist of two blue-prints. One blue-print is marked, "Map showing the boundary of the proposed

concrete pavement in the City of Jefferson," and shows Main Street with the property and curb lines thereof, the termination of the proposed improvement, the intersecting streets, and the block numbers; and the other blue-print is marked "Map showing the area of the cement street improvement in the City of Jefferson," shows Main Street with the north and south end of the proposed improvement, the intersecting streets, the frontage of the parcels of abutting property, with the names of the owners marked on such parcels, and the numbers of the lots and blocks are given. The notice as supplemented by the plans and specifications was clearly sufficient, and fully complied with the rule established by prior decisions: *Clinton* v. *Portland,* 26 Or. 410 (38 Pac. 407); *Rubin* v. *Salem,* 58 Or. 91 (112 Pac. 713); *Rogers* v. *Salem,* 61 Or. 321 (122 Pac. 308); *Jones* v. *Salem,* 63 Or. 126 (123 Pac. 1096); *Dyer* v. *Bandon,* 68 Or. 406 (136 Pac. 652).

9, 10. It is further objected that the notice is not properly signed. The charter designates the recorder's name of office as "recorder of the City of Jefferson": Section 62. The notice is signed, "S. E. Roland, City Recorder," and the official seal of the City of Jefferson is attached. The signing is sufficient particularly when considered in connection with the statement in the notice that it is posted by order of the council "of the City of Jefferson in Marion County, Oregon." The notice was headed thus: "To Whom It may Concern. Notice of Resolution No. 15"—and such heading was sufficient. The charter provides for the substance of the notice, and does not prescribe any form of notice. No particular heading is necessary, and hence the rule in *Bank of Columbia* v. *Portland,* 41 Or. 1 (67 Pac. 1112), does not apply: See, also, 28 Cyc. 981.

11. The notices and other proceedings refer to the improvement as being on First Street (also known as Main Street). It is claimed that the street was dedicated as Main Street, but it appears from the evidence that it was known both as First Street and also as Main Street. The council only made "assurance doubly sure" by using both names for the same street. The improvement is sometimes referred to as Main Street and sometimes as "First Street (also known as Main Street)," but never as First Street alone.

12. By the terms of Section 74 the charter provides that in case a part of a street is improved, the council shall direct such improvement to be made by the owners of the abutting property within a specified and reasonable time; and if the owners fail to make the improvement within the time fixed by the council, that body may then proceed to do the work and assess the expense, as provided in Section 75; provided, that for all such improvement of streets the council shall pay out of the general fund one half of the cost of improving and grading. The plaintiffs cannot complain about the time allowed for the work to be done by the property owners, because neither the plaintiffs nor any of the property owners expressed a desire to do the work and took no steps in that direction, and, moreover, the evidence fails to inform us what time was necessary or reasonable. It is further contended that the notice was not properly signed. The notice was signed "S. E. Roland, City Recorder," and has the seal of the City of Jefferson attached. The body of the notice refers to the council as being "of the City of Jefferson in Marion County, Oregon," and is therefore properly signed. The notice given pursuant to Section 75 was also sufficient.

13. The notice of intention is given by "posting notices in three places in said city," and like notice must be given before making the assessment. The charter does not provide for any form for proof of posting. In each instance the proof is that notices were posted in the City of Jefferson in three public places, and such places are specifically named; the proof is supplemented by the recorded finding of the council that notices were posted as required by the charter; it sufficiently appears that the notices were posted in the City of Jefferson in Marion County, Oregon; and the proof of posting the notices of intention is further strengthened by the parol evidence of S. E. Roland, the recorder who did the posting: *Clinton* v. *Portland,* 26 Or. 410 (38 Pac. 407); *Reiff* v. *Portland,* 71 Or. 421 (141 Pac. 167–170). All the notices were posted for the time and at the places required by the charter: *Minard* v. *Douglas County,* 9 Or. 206; *Sweek* v. *Jorgensen,* 33 Or. 270 (54 Pac. 156); *State* v. *Officer,* 4 Or. 181; *Vedder* v. *Marion County,* 22 Or. 269 (29 Pac. 619).

14. Some of the abutting property was not assessed. All that part of the improvement immediately opposite the end of Union Street, the nine feet extending into the intersection with Hazel Street, and the nine feet extending into Ferry Street were assessed to the city for the reason that the charter requires the city to pay all the expense of improving street intersections. The owner of the abutting property opposite the end of Union Street voluntarily paid for that part of the improvement, and half of the nine feet on each end of the improvement was likewise voluntarily paid. The assessments against the property of plaintiffs were neither enlarged nor diminished; hence the plaintiffs

were not injured and cannot complain: *Barber As-phalt Pav. Co.* v. *Garr,* 115 Ky. 334 (73 S. W. 1106); *Balfe* v. *Bell,* 40 Ind. 337; *Gilbert* v. *City of New Haven,* 39 Conn. 467; *Humphreys* v. *Bayonne,* 60 N. J. Law, 406 (38 Atl. 761); 28 Cyc. 1170.

The charter, by the terms of Section 77, directs a statement of the assessments to be entered in the docket of city liens; and Section 78 defines such docket as a book in which must be entered, a particular designation of the tract assessed, the name of the owner or reported owner thereof, or that the same was unknown, the sum assessed upon such tract of land and the date of entry. The city had such a book, and the charter requirements were observed in every particular.

15. The next contention arises out of the fact that the assessments were made according to the front-foot rule. Prior to making the improvement the surface of the street was somewhat irregular. The deepest cut was about 13 inches, and the deepest fill was about the same. The sections of the Jefferson charter material to the question involved are 92, 74, 75, 76 and 120, and in the order named are substantially the same as or almost identical with Sections 82, 64, 65 and 110 of the Newberg charter: Laws 1893, p. 282. Construing the Newberg charter, this court, speaking through Mr. Justice EAKIN, in *Oliver* v. *Newberg,* 50 Or. 92 (91 Pac. 470), ruled that the charter authorized a *pro rata* assessment according to the frontage on the street. The plaintiffs did not complain, until the commencement of this suit, of the method employed for making the assessment, and furthermore there is no evidence showing that they were injured.

16. The council is empowered to loan the credit of the city to an amount not exceeding $1,000: Section 23.

One half the cost of a street improvement shall be paid out of the general fund; and the street intersections shall be improved at the expense of the city. There is no merit in the contention of plaintiffs that the council violated Section 23 of the charter. At the close of business on April 17th the treasurer had $1,684.00 in the general fund, and there was practically no indebtedness that would require any portion of that sum. At the time of the trial only about $200 was unpaid on the city's part of the improvement, but at that time the treasurer had in the general fund $345.74, with no outstanding warrants, except possibly a $5 warrant, and there were ample funds available for the payment of interest on the light plant bonds.

17. It is true that the street committee did not sign a formal written report on the work until June 30th, and the street commissioner did not sign a formal certificate until September 6th, but it is also true that the council approved and accepted the work; and, under these circumstances, the validity of the assessments is not affected. The taint of fraud is not charged, nor does it appear in the evidence: *Hendry* v. *Salem*, 64 Or. 152 (129 Pac. 531). Furthermore, the complaint filed by plaintiffs does not tender any issue as to whether the work was properly done.

It is further contended that plaintiffs did not have notice that the improvement would be made at the expense of the abutting property. The posted notices of the various steps taken by the council and the express provisions of the charter served fully to notify all abutting property owners that this property would be assessed for the improvement.

18. W. L. Jones was the owner of 7½ feet of lot 11, block 6, but this property was assessed to Mrs. M. Banks. Before making the assessment the frontage

along the entire improvement was measured, the names of the owners inquired about, and then the official ownership records were examined. W. L. Jones had a deed to the strip mentioned, but his deed was not recorded at the time the assessments were levied, nor even at the time of trial; hence he cannot complain because the assessment was made to the person who appeared from the records to be the owner.

19. By force of Section 120 the charter imposes the cost of a street improvement upon the adjacent or abutting property for a distance of 100 feet back from the street. The lots on the east side of Main Street are 141.5 feet in length, and the lots on that side of the street, including the property of Smith & Fontaine, of W. L. Jones, and the Eades estate, were assessed as a whole. On the west side of Main Street some lots are more and some are less than 100 feet deep. The property owned by C. O. Morrill, as well as the land owned by H. L. Ward and S. P. Ward, is less than 100 feet in depth. The objection that the respective properties of Smith & Fontaine, W. L. Jones, and the Eades estate are assessed for a distance of more than 100 feet is not one in which the remaining plaintiffs have any interest. The objection is not common to all the plaintiffs, and the same is true with reference to the assessment of the properties of Morrill and the Wards located on the west side of the street: *Hendry* v. *Salem,* 64 Or. 152 (129 Pac. 531).

The decree rendered by the trial court is affirmed.

                                        AFFIRMED.


MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.