Submitted on briefs November 5, 1924, affirmed January 13, 1925, submitted on second appeal.

# G. S. BUTLER *v.* CITY OF ASHLAND ET AL.

### (232 Pac. 655.)

**Municipal Corporations—City Council Held Authorized to Apply Revenues from Sale of Water to Performance of Contract for Purchase of Water.**

1. City council of Ashland was authorized, under charter provisions (Art. VII, §§ 12, 19) setting apart revenues from sale of water, for payment of water bonds, and expenses of repairing, renewing and extending water system to apply revenues as received from sale of water, to performance of a contract with an irrigation district for purchase of water.

**Municipal Corporations—Indebtedness to be Met by Special Fund not Within Debt Limitation.**

2. Where a contract creating indebtedness provides for a special fund with which to meet indebtedness as it accrues, and no general liability is thereby created against municipality, such an indebtedness is not within constitutional inhibition against debt in excess of a fixed amount.

**Municipal Corporations—Notes Payable from Water Revenues Held not "Indebtedness" Against City Within Limitation.**

3. Where city council contracted to pay for water to be furnished it by an irrigation district by notes payable only from water revenues, such notes did not constitute an "indebtedness" against city within meaning of Constitution, Article XI, Section 5.

---

See (1) 28 Cyc. 1564.   (2) 28 Cyc. 1543.   (3) 28 Cyc. 1543.

2. See 19 R. C. L. 985.

3. Right of municipality to contract for periodical payments through term of years in aggregate exceeding authorized debt limit, see notes in 7 Ann. Cas. 150; 17 Ann. Cas. 420; Ann. Cas. 1913B, 1177. See, also, 19 R. C. L. 983.

From Jackson: C. M. THOMAS, Judge.

In Banc.

This suit was instituted for the purpose of enjoining the defendant, City of Ashland, from issuing its certificates of indebtedness in the sum of $36,000 in payment of 600 acre-feet of water agreed to be purchased by the defendant city from the defendant Talent Irrigation District. The purchase was authorized by a contract theretofore entered into between the defendant city and the defendant Irrigation District. This contract was construed and held valid by this court in an opinion in *Butler & Thompson* v. *Ashland,* 109 Or. 683 (222 Pac. 346). Under the terms of that contract, however, it is provided, among other things, that the mayor and common council

"should not enter into, or carry out the provisions of said contract without first having an election, giving the electors of the city a right to vote for an amendment to the city charter authorizing the incurring of said debt and the issuing of said notes."

Subsequent to executing that contract the city had in its treasury $20,000 belonging to the Water Fund and what its council believed to be sufficient income to meet the indebtedness to be incurred by the purchase of the 600 acre-feet of water without the necessity of issuing long-time notes, bonds or other evidence of indebtedness against the city. The parties to the contract therefore agreed that the City of Ashland should issue its certificates of indebtedness limiting the liability of the City of Ashland to the revenues received by it from the sale of water, and the Irrigation District agreed to accept such certificates of indebtedness and to look exclusively and

solely to the revenues to be received by the city
from the sale of water.   In accordance with this agree-
ment, a contract was entered into between the City
of Ashland and the Irrigation District substan-
tially in accordance with the terms of the contract
construed · and determined to be valid in *Butler &
Thompson* v. *City of Ashland,* above, the only dif-
ference being that, instead of issuing notes or other
evidence of indebtedness against the city, the certifi-
cates against the revenues from the sale of water
were agreed upon.   No election, authorizing a con-
tract as provided in the original contract referred to,
was authorized or held.

The contention of the plaintiff in this appeal is that
the council had not the power to authorize the is-
suance of the certificates of indebtedness without
direct authority from the people of the municipality;
that the certificates of indebtedness, authorized by
the ordinance and contract assailed in this appeal,
will exceed the limitation of authorized indebtedness
prescribed in the charter pursuant to Article XI,
Section 5 of the state Constitution.

The charter of the City of Ashland, as amended
by the act of the legislature, January 31, 1903 (Sp.
Laws 1903, p. 185), after defining the boundaries of
the City of Ashland, prescribes, among other things,
the following:

"And the present and future residents of said
district shall be and are hereby constituted a muni-
cipal corporation, by the name of 'The City of Ash-
land,' and by that name may sue, and be sued, plead
and be impleaded, prosecute and defend, in all courts
of justice, and in all actions, suits, or proceedings
whatsoever; * * may purchase, or acquire by the
exercise of eminent domain, lease, hold, or receive
property, real and personal, within and beyond the
limits of the city, for the construction and mainte-

nance of water works to supply the city with water;
* * and for such purpose or purposes may take pri-
vate property within the limits of the said city for
public use and within and beyond the limits of the
said city for the purpose of supplying it with water;
* * provided, that any and all water works and water
rights now owned, or which may hereafter be ac-
quired by the said city, or any property now owned
or which may hereafter be acquired by said city for
the purpose of supplying the inhabitants thereof with
water, shall never be rented, leased, sold or other-
wise disposed of; nor shall said city ever grant any
franchise to any person or corporation for the pur-
pose of supplying the inhabitants of said city with
water, but the right to furnish the inhabitants thereof
with water shall forever be vested in the City of
Ashland, with the full power and authority to con-
demn, purchase, appropriate, and own the water of
any stream, or spring for the purpose of supplying
the water system, and to do any and all things neces-
sary, proper or convenient in the premises to give
the most efficient and effectual water service to the
said city without in any way impairing its right to
any existing water, water power, or water right now
owned by it, or which may hereafter be owned by
the said city; and may make any and all arrange-
ments and ordinances deemed by the city council of
the said City of Ashland pertinent and proper for the
preservation and security of such water, and the
effectiveness of such water systems; provided, the
uses and appropriations heretofore made to and by
said city, and the water rights heretofore purchased
by said city, shall be and the same are hereby vested
in said municipality, with the right to exact and
collect compensation of the users of water from such
water system; provided further, that all revenues
arising from the sale of water, water power, or the
collection of water rents shall be set apart as a fund
from which to pay—first, all needful expenses in
repairing, renewing, and extending said water sys-
tem as necessity therefor shall arise, and for the

payment of the interest on the water bonds of the city of Ashland as the same shall accrue; and, second, of the residue of such water rents and revenues a sinking fund shall be created to be kept inviolate, and to be applied in the discharge of the water bonds of said city, when the same shall become due, and said funds shall be used for no other purpose. The city council shall, at its first regular meeting after the adoption of this provision, enact suitable ordinances for the purpose of carrying the same into effect."

This charter was amended at a special election held in the City of Ashland for that purpose on the 12th of February, 1915. No material change was made in the language above quoted. The city charter further limits the amount of indebtedness to be contracted by the council to the sum of $5,000, and further provides that bonds may be issued for other purposes when duly voted and required by a majority of the electors of said city.

Section 12 of Article VII of said charter further provides:

"The common council by a two-thirds vote of the council at any regular or adjourned meeting shall have the power to provide the city with water and lights and for the erection of such water and light works within and without the city as may be necessary and convenient, and to make contracts and grant franchises, privileges and contracts for such purposes; * * ."

By Section 19 of Article VII of the charter, the council, when authorized by a vote of a majority of the electors of said city voting on the question at a general election, may borrow money on behalf of said city, pledge its credit and issue negotiable bonds on such amount as may be deemed necessary for the

purpose of constructing, acquiring or completing waterworks and water plants.

The only question presented in this appeal is whether or not the council of the City of Ashland has the power to issue the certificates of indebtedness for the sum of $36,000. The limit of indebtedness fixed by the charter of the City of Ashland is $5,000. In order to contract an indebtedness in excess of that amount, the council must be authorized by a vote of the electors of the city. It is conceded that the certificates of indebtedness proposed to be issued are drawn against the revenues to be received by the city from the sale of water; that the liability of the city on account of said certificates of indebtedness is limited to the revenues received from the sale of water, and that said certificates in themselves provide that the holder looks exclusively and solely to the revenues from the sale of water for payment. The certificates of indebtedness are in words and figures as follows, to wit:

"Special Obligation Note of City of Ashland, Jackson County, State of Oregon, United States of America.

"$12,000.00      Ashland, Oregon, ————, 19——.

"For value received, the City of Ashland, a municipal corporation of the State of Oregon, promises to pay to the holder hereof the sum of —— Dollars, said sum to be payable at the times, in the amounts and manner, as follows:

"$375.00 three months from the date hereof, and $375.00 every three months (quarterly) thereafter until the entire principal sum of this obligation shall have been paid, together with the interest on all unpaid balances at the rate of six per cent per annum, payable semi-annually, both principal and interest payable in legal tender of the United States of America, at the office of the City Recorder in Ashland, Jackson County, State of Oregon.

"The City of Ashland reserves the right to pay $375.00 or any multiple thereof on the principal of this obligation before maturity and on any interest payment date.

"This obligation both as to principal and interest, shall be payable by the city of Ashland, solely from the revenues of the Water Department of the city of Ashland and shall not constitute a general obligation of said city within the meaning of the charter of said city respecting the limitation of indebtedness and the holder hereof agrees to look to the water funds and revenues of the Water Department of the city of Ashland for payment which funds and revenues, both present and future, are fully pledged for the payment of this obligation in priority over any and all other purposes.

"This obligation is one of a series of special obligation notes, given by said city, for the purpose of making payment for a perpetual right to six hundred acre feet of water, purchased by said city of Ashland from the Talent Irrigation District, located in Jackson County, Oregon.

"In Witness Whereof, the city of Ashland has caused this obligation to be signed by the Mayor and countersigned by the Recorder, under the corporate seal of the city.

"City of Ashland,

"By ——————————, Mayor.

"Countersigned:

"——————————, Recorder."

Affirmed.

For appellant there was a brief over the name of *Nellie Dickey.*

For respondent City of Ashland there was a brief over the name of *Messrs. Briggs & Briggs.*

For respondent Talent Irrigation District there was a brief over the name of *Messrs. Calkins & Hanna.*

COSHOW, J.—The only question raised by this appeal is one of power. Has the council of the City of Ashland the power to provide for the payment of water agreed to be purchased from the defendant Irrigation District without first submitting the matter to the electors of said city? The original contract between the defendants city and Irrigation District provides that the amount agreed to be paid for the 600 acre-feet of water should be secured by the defendant city by issuing bonds, which would become a general liability of the city, and, that before the contract became binding, the electors of the city should authorize the execution of the contract by the city. It was afterwards determined, however, that it would be unnecessary, in order to make payment for the water, to issue bonds; that the city had sufficient funds on hand in the Water Fund together with the anticipated revenues from the sale of water to meet its obligation incurred by the contract within a very short period after the payment was required by the terms of the contract. For that reason, the plan of making payment by special obligation notes of the city was agreed to by the defendants city and said Irrigation District. In this connection it must be kept in mind that the charter provision, quoted above, expressly provides:

"That all revenues arising from the sale of water, water power, or the collection of water rents shall be set apart as a fund from which to pay—first, all needful expenses in repairing, renewing, and extending said water system as necessity therefor shall arise, and for the payment of the interest on the water bonds of the city of Ashland as the same shall accrue; and, second, of the residue of such water returns and revenues a sinking fund shall be created to be inviolate, and to be applied in the discharge of the water bonds

of said city, when the same shall become due, and said funds shall be used for no other purposes."

1. It appears from the record that the city has paid all of the water bonds issued by it. It follows, therefore, that the entire revenue, by a specific provision of the charter, is committed to the management of the city council to pay all needful expenses in repairing, renewing and extending said water system as necessity therefor shall arise. It necessarily follows, therefore, that the city council is authorized, by the specific provisions of the charter quoted, to apply the revenues in its treasury as the same are received from the sale or other disposal of water to the performance of its contract with the defendant Irrigation District for an extension of the defendant city's water system. Unless, therefore, the obligation created by the contract under consideration is a general liability of the city and exceeds the limitation of indebtedness prescribed by its charter, the contract assailed in this appeal is within the powers of the council of the defendant city, and is lawful.

2. The authorities are well-nigh unanimous, that where a contract creating an indebtedness provides for a special fund with which to meet the indebtedness as the same accrues, and no general liability is thereby created against the municipality, such an indebtedness is not within the constitutional inhibition against creating a debt in excess of a fixed amount.

"A municipality does not create an indebtedness by obtaining property to be paid for wholly out of the income of the property." 5 McQuillin, Municipal Corporations, 4725, § 2230.

"If there is money in the treasury sufficient to meet a liability, and which can be applied thereto when due, at the time the liability is created, no

indebtedness is incurred.'' 5 McQuillin, Municipal Corporations, 4722, § 2227.

''If an obligation is payable out of a special fund only, and the municipality is not otherwise liable, it is generally held that there is no indebtedness, subject to certain exceptions hereinafter noticed in this connection.'' 5 McQuillin, Municipal Corporations, 4722, 4723, § 2228.

This court has frequently approved the principles enumerated in the foregoing quotations from McQuillin: *Morris* v. *City of Sheridan,* 86 Or. 224, 233 (167 Pac. 593); *Smith* v. *Jefferson,* 75 Or. 179 (146 Pac. 809); *Joseph City* v. *Joseph Water Works,* 57 Or. 586 (111 Pac. 864, 112 Pac. 1083); *Kadderly* v. *Portland,* 44 Or. 118, 151 (74 Pac. 710, 75 Pac. 222); *Little* v. *City of Portland,* 26 Or. 235, 246 (37 Pac. 911).

3. The language of the special obligation note limits the liability of the city to the water revenues. The special obligation notes, therefore, do not constitute an indebtedness against the city within the meaning of Article XI, Section 5, of the Constitution of Oregon.

The provisions of the charter, under which the defendant city is acting, conferred the power to manage the water system upon the city council of Ashland. That charter specifically directed the city council to use the revenues from the disposal of water in the specific manner provided for in the contract involved in this appeal. This provision of the charter was first enacted by the legislature of the state, but that provision was amended by the vote of the electors of the City of Ashland in 1915. The people of the City of Ashland, therefore, have directly, by their vote, authorized the council of the City of Ashland to enter into such a contract, as it has done, with the defendant Irrigation District. The

contract, therefore, is within the power of the city council of the defendant City of Ashland to make and is lawful. The decree appealed from is affirmed and the complaint of the plaintiff dismissed.

AFFIRMED.