The statutory authority for the issuance of revenue bonds is to be distinguished from the constitutional limitation on municipal indebtedness. No constitutional provision prohibits the legislature from permitting a city to reimburse itself for funds already advanced for the acquisition of a water utility. Prior to an amendment made in 1932, sec. 3, art. XI, Const., did not contain the sentence quoted in the majority opinion. The evident purpose of the section as it was before that sentence was added was to limit the indebtedness of a municipality. It was recognized then, as it is now, that not all bond issues authorized by a municipality were "debts" of that municipality to which constitutional debt restrictions would apply. The issuance of revenue bonds, or bonds to be paid, not by the municipality as such, but out of the income of that to which the money so acquired was to applied, was within the power of a municipality and such issuance did not create indebtedness within the meaning of municipal debt restrictions like those of sec. 3, art. XI. Brockenbroughv. Board of Water Com'rs (1903), 134 N.C. 1,46 S.E. 28; Twichell v. Seattle (1919), 106 Wn. 32,179 P. 127; Shields v. Loveland (1923), 74 Colo. 27, 218 P. 913;Butler v. Ashland (1925), 113 Or. 174, 232 P. 655; BowlingGreen v. Kirby (1927), 220 Ky. 839, 295 S.W. 1004. *Page 327 
In 1921 a case similar to the one at bar came before this court. In that case, State ex rel. Morgan v. Portage,174 Wis, 588, 184 N.W. 376, it was held that the issuance of revenue bonds by a municipality for the acquisition or construction of public utilities, such bonds being payable only from the revenue from the utilities and secured by mortgage liens, did not create corporate indebtedness within the constitutional limitation. But the court in that case also held, as pointed out in the majority opinion, that bonds issued for improvements in a waterworks system, rather than for its initial acquisition, since they would not be subject to a purchase-money lien, would be subject to the constitutional debt restrictions of sec. 3, art. XI, Const.
The 1932 amendment to sec. 3, art. XI, Const., made it clear that besides revenue bonds issued for the acquisition of utilities, similar bonds issued for extending or improving utilities were also not to be considered debts of the municipality within the meaning of that section if they were secured solely by the property or income of such utility. The amendment put into words the previously accepted general proposition that revenue bonds payable from operating income of utilities did not constitute indebtedness, and the amendment removed the line of distinction, State ex rel. Morgan v. Portage, supra, created between revenue bonds issued for the acquisition of utilities and those issued for the improvement or extension of them.
It is now argued because the amendment did not list the word, "reimburse," that sec. 66.06 (9) (b) 13, Stats., is unconstitutional. The effect of this is to say that waterworks mortgage-revenue bonds cannot be issued without having the constitutional provisions relative to indebtedness apply because these bonds are intended, not for improvements upon or acquisition of property, but to reimburse the general fund from which the amount needed for the acquisition of the waterworks was initially obtained. Considering the amendment to *Page 328 
sec. 3, art. XI, Const., in the light of traditional interpretations of municipal "indebtedness" and the generally recognized right of municipalities to issue revenue bonds, the section does not limit the purposes for which revenue bonds can be issued to those specifically enumerated in the amendment. There may be other valid purposes for the issuance of revenue bonds than those specifically set forth in the amended sec. 3, art. XI. A municipality concededly has authority, for instance, to issue refunding bonds (sec. 66.06 (9) (b) 2) in spite of the fact that the purpose of "refunding" is not specifically listed in sec. 3, art. XI.
Even if we give the amendment an extremely restrictive interpretation, the plan proposed here would fairly come within the category of management, which is one of the purposes listed in the amendment. The proposed bond issue may well be the sort of indebtedness referred to in the exception clause in the amended sec. 3, art. XI, Const., where it says, "an indebtedness created for the purpose of purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating or managing a public utility of a town, village or city." Refinancing is a step in the process of acquiring the utility by the city and enabling the utility to pay its debt. It is certainly within the realm of managing a public utility to enable that utility to borrow money at a lesser rate, which appears to be what will result if the proposed bonds are issued.
Extensive recognition has been given to the proprietary capacity of a municipal corporation in this respect. In that capacity a city may exercise its business powers quite as effectively as a private corporation. In Logansport v. PublicService Comm. 202 Ind. 523, 532, 177 N.E. 249, 76 A.L.R. 838, it is said:
"When a municipal corporation engages in an activity of a business nature rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, *Page 329 
which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity . . . and a city operates its municipally owned utility plant in its proprietary capacity as a private enterprise subject to the same liabilities, limitations, and regulation as any other public utility."
The test as to the application of the constitutional provisions of sec. 3, art. XI, Const., is in the question, "Does this add to the indebtedness of the city?" If it does not, then sec. 66.06 (9) (b) 13, Stats., gives the city the authority to proceed as it is endeavoring to do. If there is no tax liability that the transaction can visit upon the municipality, then the five per cent restriction of the constitution is not invaded and it is not necessary to levy a direct annual tax to support the issue. The indebtedness of the water utility is not the indebtedness of the city of Madison. The debtor-creditor relationship which will come into existence if the bonds are issued will be between the utility and the obligees of the revenue bonds. As matters stand now the waterworks has been financed from the general fund and from proceeds of its general-obligation tax bonds. For moneys expended from the general fund the city has a purchase-money lien against the waterworks and its earnings. If the principal now owed by the waterworks to the general fund is paid up through proceeds from the proposed bond issue, that purchase-money lien will no longer exist. In its stead will be a similar lien against the waterworks and its earnings in favor of those who are holders of the bonds. It would seem that the burden upon the waterworks would not be increased but shifted. No additional lien would be created. Because of this, the reasoning in State ex.rel. Morgan v. Portage, supra, would not apply with as much force here as it did in that situation where the proposed bond issue was not to retire a purchase-money lien already in existence, but was to create an additional lien upon the waterworks property for improvements. As we have seen, the *Page 330 
force of the court's reasoning, even in the State ex rel. Morganv. Portage situation has been minimized by the 1932 amendment to sec. 3, art. XI.
I am authorized to state that Mr. Justice WICKHEM joins in this dissent.