## THE SALEM WATER COMPANY, APPELLANT, v. THE CITY OF SALEM, RESPONDENT.

STATUTE—CONSTRUCTION OF.—The act incorporating the city of Salem prohibits the Common Council from creating "any debt or liabilities in any manner" against the city which shall exceed the sum of one thousand dollars: *Held*, that the object of this provision was to compel the Common Council to conduct the financial operations of the city upon a cash basis and thus prevent the present and future resources of the city from being incumbered or pledged for any sum in excess of such limitation.

IDEM.—An agreement to pay the Salem Water Company eighteen hundred dollars per annum, for seventeen years, in quarterly installments, for water, to be furnished the city, without any provision for raising and appropriating revenue to be applied in payment of such liabilities·as they became due, necessarily created a liability against the city within the meaning of such prohibitory clause. The liability being in excess of such limitation, the contract is void.

APPEAL from Marion County.

The complaint alleges, in substance, that the city of Salem, by an ordinance, contracted and agreed to pay James M. Martin and David Allen, their associates, successors and assigns, for supplying said city of Salem with good and wholesome water, as by said ordinance provided, the sum of eighteen hundred dollars per annum, in gold coin, to be paid in quarterly installments in each and every year for seventeen years.

That said Martin & Allen duly accepted the contract and undertook to comply with its terms and conditions; that afterwards, for a valuable consideration, they assigned their interest in said ordinance and contract to the Salem Water

Company, a private corporation; that said company did erect waterworks and did supply the said city with water in accordance with the terms of said contract, from and after the 27th day of September, 1871, up to the 27th day of March, 1873, and that the city received and used said water so furnished by said company; that the city paid for all said water received and used, except for the quarter ending the 27th day of March, 1873, at which time it is alleged there was due appellant the sum of four hundred and fifty dollars, gold coin; that said city refused to pay said sum, or any part thereof, except the sum of two hundred dollars.

Respondent interposed a demurrer to the complaint upon the ground that it does not contain facts sufficient to constitute a cause of action. The demurrer was sustained by the court below and judgment rendered for respondent for costs, from which appellant appeals.

*Mallory & Shaw*, for Appellant.

*Knight & Lord*, for Respondent.

By the Court, PRIM, J.:

The respondent is a municipal corporation created by the Legislature, and clothed with the usual powers of such corporations. Its charter, among other things, provides that "the mayor and aldermen shall compose the Common Council of said city * * * and shall have the exclusive power to levy and collect taxes for city purposes, not to exceed one per cent. per annum on property in said city taxable for county purposes; to make by-laws and ordinances not inconsistent with the laws of the United States, or of this State." It further provides that "the City Council shall not in any manner create any debt or liabilities which shall singly, or in the aggregate, exceed the sum of one thousand dollars." The last provision was evidently inserted in the charter by the Legislature in pursuance of § 5 of Art. XI of the Constitution, which provides that "Acts of the Legislative Assembly incorporating towns and

cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

The Common Council of the city of Salem, in making the contract set out in the complaint, undertook to bind the city by present obligation to pay the Salem Water Company the sum of eighteen hundred dollars per annum, to be paid in quarterly installments for seventeen years, amounting in the aggregate to the sum of thirty thousand six hundred dollars. The demurrer interposed to the complaint admits that the contract was made and entered into between the parties as therein set out. And the main question in the case to be determined is whether the contract "in any manner creates any debt or liabilities which singly or in the aggregate exceed the sum of one thousand dollars." If it does, it is a contract directly prohibited by the charter, and is therefore void.

The position taken by respondent is, that no tax having been levied or specific fund set apart and appropriated for the payment of those liabilities as they accrue, that it necessarily creates a debt or liability in excess of the limitation specified in the charter; while it is insisted by appellant that the promise made by the Common Council on behalf of the city to pay money for water to be furnished in the future created no debt or liability against the city, "if the amount proposed to be paid does not exceed the amount that may be raised by the tax levy for the current year."

According to this theory the question as to whether any debt or liability was created in any manner against the city by this contract, depends wholly upon the financial condition and ability of the city to raise the amount agreed to be paid, and not upon the terms and conditions of the contract itself, or upon the further fact as to whether any provision was made for raising a fund and setting it apart to pay these liabilities as they accrue.

In other words, the theory contended for by appellant is this: If the Common Council can raise the amount proposed to be paid to this company by levying and collecting a tax of one per cent. upon all the property included within the

city limits taxable for county purposes, then no debt or liability was created against the city within the meaning of the prohibitory clause contained in the charter. This "is a proposition in legal metaphysics" we confess we are unable to comprehend.

If this theory should be adopted, then the State may make contracts involving millions of dollars, without creating any debt or liability against the State within the prohibitory clause of the Constitution, as that instrument contains no provision limiting the amount of percentage that may be levied upon the property of the State for the purpose of raising revenue to carry out the various objects of the State government. The words "any debt or liabilities," as used in the charter, are general and may include any kind of debt or liability, either absolute or contingent, express or implied. A debt exists against the city whenever it agrees to pay money in return for services performed, or, as in this case, for water furnished for the use of the city. In a popular sense, debt includes all that is due to a party under any form of obligation or promise. (3 Met. 523.)

Either of the definitions are sufficient to embrace the liability created by the contract under consideration. The moment the contract was made it created a present obligation on the part of the city to pay money to the company at future periods. Now, whether this obligation can be called a debt in the technical sense or not, it is at least a liability; that is, the city is "bound or obliged in law" to pay for the water furnished by the company.

The Eighth Article of the Constitution of the State of California provides that the Legislature shall not create any debt or liabilities in any manner which shall exceed the sum of three hundred thousand dollars, except in certain contingencies specified. A question arose upon the construction of this provision in the cases of *The State of California* v. *McCowley* (15 Cal. 455); *McCowley* v. *Brooks* (16 Cal. 24); *Kloppikus* v. *State Capitol Commissioners* (16 Cal. 253).

In the first case the question arose upon a contract between the State and McCowley's assignor, entered into in

pursuance of certain provisions of an act of the Legislature whereby the State agreed to pay one Estell the sum of ten thousand dollars per month, during a period of five years, for taking care of the State prisoners, which amount was to be paid on the last day of each month, "out of money in the treasury not otherwise appropriated." The question presented for determination was whether this contract created any debt or liabilities against the State within the meaning of this provision of the Constitution? Mr. Chief Justice Huber, in delivering the opinion of the court, said: "The Eighth Article was intended to prevent the State from running into debt, and to keep her expenditures, except in certain cases, within her revenues. These revenues may be appropriated in anticipation of their receipt as effectually as when actually in the treasury. The appropriation of the moneys when received meets the services as they are rendered, thus discharging the liabilities as they arise, or rather anticipating and preventing their existence. This appropriation accompanying the services operates, in fact, in the nature of a cash payment."

In *Kloppikus* v. *State Capitol Commissioners*, the same question arose upon a contract for erecting a State Capitol, made in pursuance of the act of March 29, 1860. The commissioners were authorized by the act to contract to the extent of one hundred thousand dollars; and that amount was appropriated by the act, out of any money in the treasury not otherwise appropriated, to carry this act into effect. "This act was held not to be repugnant to the Eighth Article of the Constitution upon the same grounds stated in *The State* v. *McCowley*."

This question also arose and was decided in the case of *The State* v. *Medberry* (7 Ohio St. R. 526). In that case the Board of Public Works contracted to pay certain parties twenty-seven thousand five hundred dollars a year, payable monthly, for five years, amounting in all to the sum of one million three hundred and seventy-five thousand dollars, for materials and repairs of the State canals. The Constitution of Ohio prohibits the General Assembly from creating any debt or liabilities against the State which shall

exceed the sum of seven hundred and fifty thousand dollars, except in certain cases mentioned. It also provides that "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and no appropriation shall be made for a longer period than two years." It was held by the court that these contracts for repairs on the canals for a period of five years necessarily created a debt against the State in excess of the constitutional limit; for the reason that the General Assembly had no power to raise revenue and to authorize its appropriation in payment of these liabilities accruing after two years.

The opinion of the court was delivered by Mr. Justice Swan, which is a very able and well-considered opinion. After alluding to the general working of the financial system of the State, as to the payment of current expenses, and the creation of a debt, a very clear and forcible distinction is drawn between those contracts which do and those which do not create a debt within the meaning of this constitutional restriction. The principles stated and illustrated in the opinion are very handsomely summed up by Mr. Justice Sawyer in *The People* v. *Pacheco* (27 Cal. 218), as follows: "That the legislative department of the Government is vested with the power of taxation, and the authority to determine the objects for which the taxing power shall be exercised, and to appropriate the moneys thus raised to such objects; but that the power of appropriation, under the Constitution of Ohio, is limited to two years; that when an appropriation is made for an object to be accomplished, and paid for within the two years, and, at the same time, revenue is provided to meet the appropriation, a contract made in pursuance of the appropriation, and payable out of it, does not create a debt within the meaning of the prohibitory clause of the Constitution. But a contract to be performed beyond the two years, or without raising and appropriating the revenue to meet it, necessarily creates a debt, as the services cannot be paid for when rendered in the first case, because the legislative power has no authority to make the appropriation, and, in the second, because it

has failed to do it." The same doctrine was held in the case of *The People* v. *Pacheco* (27 Cal. 175).

The theory adopted in these cases is, that if expenses are incurred by authority of the legislative department for some specified object, without any provision being made for the payment of such expenses as they accrue, they thereby create and become a debt against the State, within the meaning of the prohibitory clause. But, on the other hand, if at the same time such expenses are authorized to be incurred, provision is made for the payment of such expenses as they accrue, and such expenses are incurred, they do not thereby become a debt against the State, because the whole is regarded as a single financial transaction. The only case referred to in which this doctrine appears to be controverted, is that of *Coulson* v. *The City of Portland*, reported in 1 Deady, 481. Mr. Justice Deady, in delivering his opinion in the case, said: "By means of such artificial reasoning and unlooked-for constructions of popular and plain terms and phrases, Constitutions may be purged of every prohibition upon the legislative power of taxation and creating indebtedness. The fact that the ordinance appropriates money to pay these coupons, as they fall due, makes no difference. There is no magic in the legislative formula, 'There is hereby appropriated.'"

It will be noticed that the contracts in the cases cited are very similar to the contract in the case under consideration, except that in those cases provision was made for raising and appropriating money to pay the liabilities incurred, as they became due, while in this no such provision was made.

It will be further noticed that in *Coulson* v. *Portland* it was held that the ordinance created a debt against the city within the meaning of the restrictive clause of the charter, notwithstanding the ordinance also contained a provision for raising and appropriating revenue in payment of the coupons as they became due, while in all the other cases it was held that the provision made for raising and appropriating revenue, in payment of the liabilities, as they became due, operated to prevent the existence of a debt against the State, within the meaning of the constitutional restrictions,

by "discharging the liabilities" as they arose, or rather by "preventing their existence."

But in the case under consideration no such provision was made; therefore, we do not undertake to decide at present what would have been the effect upon the liability created by the ordinance in question if such provision had been made for meeting such liabilities as they became due.

As to the prohibitory clause of the charter, its object was to compel the Common Council to conduct the financial operations of the city upon a cash basis, and thus prevent its present and future resources from being incumbered and pledged for a city debt in any sum greater than the amount mentioned in the limitation.

And, as in our opinion the ordinance upon which this action is based did create a liability against the city which exceeds the limitation, it must be regarded as a contract directly prohibited by the charter, and therefore void.

Judgment affirmed.