Argued May 11; affirmed June 2, 1937

# COOS COUNTY *v.* ODDY

### (68 P. (2d) 1064)

*Joseph McKeown,* of Marshfield (Liljeqvist, Swanton & McKeown, of Marshfield, on the brief), for appellant.

*Donald K. Grant* and *Roy F. Shields,* both of Portland (Maguire, Shields & Morrison, of Portland, and Ben C. Flaxel, of North Bend, on the brief), for respondent.

KELLY, J. This proceeding is brought to test the validity of a proposed issue of funding bonds which Coos County is endeavoring to issue and sell. If such

bonds when issued would be invalid, no duty rests upon the defendant as county clerk to advertise the sale thereof. If, on the other hand, the issuance and sale thereof are fully authorized, the peremptory writ was properly issued.

Beginning in the year 1931, continuing to and including the year 1934, and during the months of January and February in the year 1935, Coos County issued warrants for the construction and maintenance of permanent roads. On March, 1935, said warrants remained unpaid in the amount of $313,187.71, together with interest thereon in excess of $65,000.

On January 4, 1936, the county court of Coos county made an order calling a special election to be held January 31, 1936, submitting to the legal voters of Coos county the question whether said county should or should not issue general obligation bonds to be designated as funding bonds, in the amount of $375,000, for the purpose of retiring said outstanding warrants, bearing date prior to March 7, 1935, for the construction and maintenance of permanent roads within Coos county. Notices of this election were sent out to be posted and it was advertised in the local newspaper.

Authority is found for the action of said county court in submitting this question to the electorate in the provisions of chapter 449, Oregon Laws 1935, pp. 826, et seq.; Volume 5, Oregon Code Ann. Supp. 1935, pp. 661, 662.

On January 31, 1936, said special election was held in conjunction with the special election of the state of Oregon held on the same date. At said election 5,453 registered voters of said county voted, there being 5,067 votes cast on the question of said proposed refunding

bond issue, 2,638 votes being cast in favor of said measure and 2,420 votes against it. Thus it will be seen that of those voting upon the question there was a majority of 209 in favor of said measure.

Thereafter, the county court entered an order declaring the result of said election and ordered the defendant, as county clerk, to advertise that said bonds would be sold as stated. Failure on the part of defendant to comply with said order resulted in the institution of this mandamus proceeding.

Two assignments of error appear in defendant's brief upon which are based five objections to the validity of said bonds.

(1) Defendant urges that the bonds in suit are void under article XI, section 10, of the constitution of the state of Oregon, for the reason that, while they constitute a debt of a county, such as defined in said section, there is no authorization of the incurrence of debts for the refunding of past expenditures, but only debts to be incurred in the future.

The provisions of said section of the Oregon constitution applicable to the instant case are:

"§ 10. Limitation upon powers of county to contract debts—Permanent roads—Exceptions as to certain counties.—No county shall create any debt or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed 6 per cent. of the assessed valuation of all property in the county."

We are unable to agree with defendant that the proposed issuance and sale of the bonds in suit will create an indebtedness. Moreover, we think that the issuance of the warrants which comprise the obligation of a county thus sought to be refunded are not debts or liabilities which, singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000. It is stated in the alternative writ and admitted in the answer of defendant, that before the issuance of any warrants, "county taxes were duly levied upon the taxable property in said county" in a sum which "if fully collected, together with the other income to be obtained by said county" during each of the respective years wherein warrants in suit were issued respectively, "would have been sufficient to pay in full said estimated disbursements". In each instance, it is alleged that the warrants were issued for the construction and maintenance of permanent roads in the county.

It is, however, contended that a portion of them were issued in violation of the requirements of the local budget law. That contention is based upon the fact that in certain instances the expenditures for road purposes exceeded the amount appropriated for road purposes; but in no year did the total amount of warrants issued by the county for all purposes exceed the total budget for all purposes for that year. In each instance, where the road expenditures exceeded the road budget, the alternative writ discloses that this excess was paid from unexpended funds duly transferred from other funds in the general budget of the said county pursuant to section 69-1110, Oregon Code 1930.

If there are revenues on hand to meet it, an appropriation or expenditure does not create a debt of the county within the meaning of the constitutional limita-

tion, for the reason that the revenues of a county in the process of collection are treated as though they were actually in the treasury: *Kneeland v. Multnomah County*, 139 Or. 356, 362 (10 P. (2d) 342); *State ex rel. v. Stannard*, 84 Or. 450, 481 (165 P. 566, 571, L. R. A. 1917F, 215); *State ex rel. Pierce v. Slusher*, 117 Or. 498, 500 (244 P. 540, 58 A. L. R. 114).

██ Defendant states that section 10 of article XI of the Oregon constitution does not authorize the incurring of debts for the refunding of past expenditures made in the construction and maintenance of permanent roads, but permits only debts to be incurred for duly authorized roadwork which is to be done in the future.

This statement implies that there must be a constitutional grant of power or authority in order to render valid the due enactments of the legislature. The correct rule is that, except where restricted by some constitutional limitation, the legislature has plenary power and authority.

There is no constitutional restriction upon the power of the legislature to authorize counties to refund valid existing indebtedness. Refunding such indebtedness does not constitute the incurrence of creation of debts.

■ (2) It is also argued by defendant that said bonds are void in that the election purporting to authorize their issuance was not provided for by chapter 449, Oregon Laws 1935 (Volume 5, Oregon Code Ann. Supp. 1935, pp. 661, 662), nor does said statute provide any election machinery for the approval of said bond issue.

Section 5 of said chapter 449 is as follows:

"Section 5. The power granted by this act hereby is vested in each county of the state of Oregon and is self-

operating in any such county without the necessity of any further act whatsoever upon the part of any such county; provided, however, that the funding bonds referred to in this act shall be issued only in case they shall have been approved by the legal voters of the issuing county. The county court or board of county commissioners, as the case may be, of any county hereby is authorized to call a special election for the purposes of this act.''

It is quite apparent that defendant deemed suitable the mode of proceeding prescribed in section 36-204, Oregon Code 1930, because he insists that strict observance of its terms invalidates the election. The learned trial judge was of the opinion that said section 36-204 was controlling. We think that it provides an appropriate method of holding said election.

■ (3) Defendant claims that the warrants in suit are void because they were not authorized by a majority of the voters. While it is true that section 10, article XI, of the state constitution provides that ''debts for permanent roads shall be incurred only on approval of a majority of those voting on the question,'' it is obvious that the debts there mentioned are those which ''shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000.'' For the reasons above stated, the indebtedness evidenced by the warrants in suit does not come within that category.

(4) Defendant asserts that the said warrants are void insofar as expenditures for which they were issued were not within the amounts duly authorized by the budgets; but were in excess of the same. As explained above, it cannot be said that there were any such excessive expenditures when the law is applied authorizing the transfer of moneys remaining unexpended in one specific fund to another and different fund.

■ On oral argument, defendant called attention to exhibit J of the alternative writ wherein it appears that among the items in the budget of 1934, the allocations were for telephones, ferries, patrolmen and office supplies. These items very properly may be considered as prospective incidental expense to be incurred for the building or maintenance of permanent roads.

■ Upon oral argument, it was also urged that the interest upon the warrants in suit could not be the subject of the refunding statute. We are unable to concur in this view. We hold that such interest is as much a part of the warrant indebtedness as the principal.

(5) Defendant also insists that the bonds in suit are void, because the special election of January 31, 1936, authorizing them was illegal and of no effect in that:

(a) No petition of the voters of the said county was ever made or presented to the county court requesting said court to conduct such special election.

(b) That the order of the county court calling said election affirmatively shows that it was not entered in the journal of said court at least 40 days preceding said election.

(c) That in certain precincts some of the notices of said election required by the statute were not posted.

■ The vice of defendant's position as stated in subdivisions (a) and (b) of the fifth ground in support of his assertion that said bonds are invalid is, that notwithstanding the bonds in suit are not to be issued to raise money for the construction and maintenance of permanent roads, defendant, nevertheless, seeks to invoke the provisions of the statute governing the submission to the electorate of a county the question of issuing bonds for that purpose: Sections 44-2001,

44-2002, and 44-2005, Oregon Code 1930, and section 44-2010, ibid., as amended by Oregon Laws 1931, chapter 217.

 The position stated in subdivision (c), last above set out, is based upon the following facts:

There are 56 voting precincts in Coos county. If the provisions of the statute had been strictly followed, there would have been posted 820 notices of said election. The notices prescribed by statute were all duly posted in each of said voting precincts, except that in precincts numbered 10, 25, 41, 45 and 60, while there should have been 20 notices posted, in fact there were only 18 posted in each of said precincts; and in precinct numbered 57, there should have been 10 while in fact only eight notices were posted in said precinct. In precinct 18, four of the required 20 notices were not posted until January 14, 1936. The statute requires the county clerk "at least 10 days before any special election" to mail two election notices "to each judge and each clerk of election in each precinct," and prescribes that it shall be the duty of the several judges and clerks to immediately post said notices in public places in the respective precincts: Section 36-204, *supra*. The election being held upon the 31st of January and the four notices last mentioned having been posted on the 14th of the same month, there was no irregularity with respect thereto.

The learned trial judge held that with respect to the six precincts in each of which there were two less than the required number of notices posted, there was a substantial compliance with the law, and that there is nothing in the record to show that, if in each of those six precincts these two notices had been posted, the

result would have been different; hence, the election was not illegal or ineffective, but valid and binding. Without reviewing the authorities upon this phase of the case, we concur with the trial court in respect thereto.

We prefer, however, to base the result in this case upon the amendment of section 5 of said chapter 449 of Oregon Laws 1935, which, among other things, prescribes that,—

"If a county court heretofore has ordered and if the legal voters of the issuing county heretofore have approved the issue of funding bonds by said county pursuant to the provisions of this chapter, such order and election hereby is in all respects approved, confirmed and ratified, irrespective of any irregularity which may have occurred in such order or in such election, and such order, election and approval shall be sufficient to permit the issuance of said bonds at any time prior to July 2, 1939." Chapter 471, Oregon Laws 1937, p. 819.

In a county wherein the number of judges and clerks of election indicates that there should have been 820 notices posted, the failure to post two of such notices in each of six precincts resulting in the posting of 808 notices throughout the county instead of 820, is only an irregularity.

It is obvious that in the first instance the legislature could well have prescribed the posting of a less number of notices in each precinct than twice the number of judges and clerks therein. Likewise, at the time of the enactment of chapter 471, Oregon Laws 1937, *supra*, the legislature had the power and authority to prescribe the posting of a less number of notices than two for each judge and clerk.

The general and established rule is that whatever the legislature could have authorized, it can ratify if it still possesses said power to authorize at the time of ratification: *Charlotte Harbor & N. Ry. Co. v. Welles,* 260 U. S. 8 (43 S. Ct. 3, 67 L. Ed. 100); Vol. 1, Jones Bonds and Bond Securities, § 346, and authorities there cited.

The judgment of the circuit court is affirmed. It is ordered that no costs or disbursements be awarded to either party.

BELT, J., not sitting.

CAMPBELL, J., dissents.