TERRY, *Appellant,*

*v.*

# MULTNOMAH COUNTY, AND PORTLAND ADVENTIST HOSPITAL, *Respondents.*

## (No. A 76 03 02897, CA 6406)

554 P2d 1017

Stan Terry, Portland, pro se, for appellant.

George M. Joseph, County Counsel, Martin B. Vidgoff, Deputy County Counsel, and Gary J. Zimmer, Deputy County Counsel, Portland, for respondent Multnomah County, Oregon.

Clifford B. Alterman, Leslie M. Roberts and Kell, Alterman & Runstein, Portland, for respondent Portland Adventist Hospital.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a summary judgment entered on behalf of defendants.

This suit arose out of the purchase by defendant Multnomah County from defendant Portland Adventist Hospital of a 230-acre parcel of land in East Multnomah County known as the Glendoveer golf course. Of the agreed sale price of $3 million, $2.4 million was to be paid on execution of the sale contract and the buyer, defendant County, agreed to assume an outstanding obligation of $600,000 owed by the seller, defendant Hospital, on an existing contract for the above parcel.

Of the $2.4 million to be paid on execution of the sale contract, the County appropriated $1 million in its 1974-75 budget and received a $1.4 million advance from the State Highway Fund pursuant to Oregon Laws 1973, ch 677 (ORS 366.505 note), which provides in pertinent part:

"Section 2. The State Highway Commission shall advance to the County of Multnomah, from the State Highway Fund, an amount not to exceed $3 million for the purchase of Glendoveer National Golf Course as a park and recreation facility.

"Section 3. (1) The commission shall fix the rate of interest to be charged on the advance made under section 2 of this Act.

"(2) Repayment of principal and payment of interest by the County of Multnomah shall be made by withholding from payments due the county under ORS 366.525 to 366.540. Funds withheld under this subsection remain in the State Highway Fund available for the purposes provided by law."

Plaintiff filed suit over a year after execution of the contract contending that the sale violated Art XI, § 10, Oregon Constitution, in that both the $1.4 million advanced by the State Highway Fund and the $600,000 assumed obligation constituted debts or liabilities in excess of the $5,000 constitutional limitation on county indebtedness.

[ 17 ]

Art XI, § 10, Oregon Constitution, provides:

"No county shall create any debt or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000; provided, however, counties may incur bonded indebtedness in excess of such $5,000 limitation to carry out purposes authorized by statute, such bonded indebtedness not to exceed limits fixed by statute."

The above section was adopted to protect against, among other things, the expenditure in advance of anticipated revenue. It prohibits the spending of unlevied taxes. *Kneeland v. Multnomah County,* 139 Or 356, 10 P2d 342 (1932); *Brockway v. Roseburg,* 46 Or 77, 79 P 335 (1905).

The allocation of $1.4 million in state highway funds pursuant to Oregon Laws 1973, ch 677, manifestly does not create a debt or liability within Art XI, § 10, Oregon Constitution, because the County is not obligated to repay the $1.4 million advanced from the State Highway Fund. Rather, the legislature, in enacting chapter 677, has allocated highway funds for a specific and permitted use under Art IX, § 3, Oregon Constitution, and elected to provide for a smaller future allocation to Multnomah County from the State Highway Fund. The salient feature of this statute is that of an advance by the state out of highway funds; it does not require the county to repay a debt or liability out of anticipated county revenue in violation of Art XI, § 10.

Plaintiff's second argument more squarely presents the debt limitation issue. Plaintiff contends that the County's assumption of the Hospital's $600,000 obligation to its vendor constitutes the assumption of a debt and that therefore the County has created a debt or liability in violation of Art XI, § 10.

Defendant County advances two arguments in support of its position that the assumption of the Hospital's obligation was not a debt.

First, the County maintains that it had on hand at

the time of the execution of the contract $2,619,407 in contingency or unappropriated funds, and that therefore there was no debt or liability within the debt limitation provision because the County could have paid the assumed liability. Defendant relies on the following passage from *Coos County v. Oddy,* 156 Or 546, 68 P2d 1064 (1937):

> "If there are revenues on hand to meet it, an appropriation or expenditure does not create a debt of the county within the meaning of the constitutional limitation, for the reason that the revenues of a county in the process of collection are treated as though they were actually in the treasury. * * * " 156 Or at 551-52.

*See also, Bowers v. Neil,* 64 Or 104, 115, 128 P 433 (1913).

In this case the County signed a contract on September 19, 1974, in which it agreed to pay $600,000 in two instalments payable September 17, 1975, and September 17, 1976. The County did not appropriate funds to pay the contract balance until its 1975-76 budget. It is difficult to see in what way the principle of *Coos County* aids the County's position. The $2,619,407 was in no way appropriated to the Glendoveer contract. On the contrary the Glendoveer obligation was specifically payable out of the county road fund. There was no appropriation, there was no expenditure and the revenues were not in the process of collection at the time of the assumption of the obligation.

■ The approach suggested by defendant County would be more appropriate under the more common "income and revenue" or "current revenue" debt limitation provision. But even under those provisions an indebtedness or liability incurred in one year may not be paid out of revenues of a subsequent year. *See, Smith v. Broderick,* 107 Cal 644, 40 P 1033 (1895). The issue in Oregon is not whether the county is solvent, but whether a debt or liability has been incurred, within the ordinary contemplation of the word. *See, Brewster v. Deschutes County,* 137 Or 100, 1 P2d 607

(1931). In Oregon the phrase "debt or liability" has been understood to include obligations for which no appropriations have been provided since *Salem Water Co. v. City of Salem,* 5 Or 29 (1873), which approved the theory that

> " * * * if expenses are incurred by authority of the legislative department for some specified object, without any provision being made for the payment of such expenses as they accrue, they thereby create and become a debt against the State, within the meaning of the prohibitory clause. * * * " 5 Or at 35.

*See also, Multnomah County v. First Nat. Bank,* 151 Or 342, 50 P2d 129 (1935).

The second theory advanced by the County to support its position that no violation of the debt limitation occurred is the special fund doctrine. As just mentioned, the contract between the County and the Hospital provides that:

> "Notwithstanding anything to the contrary contained in this contract, the parties agree that the liability of Buyer to make the payments due on the Stenzel Contract or hereunder is strictly limited to funds in Buyer's County Road Fund."

This provision, the County argues, brings the obligation within the special fund exception to the debt limitation.

The special fund doctrine is succinctly stated in *Rorick v. Dalles City,* 140 Or 342, 12 P2d 762 (1932):

> " * * * [O]bligations payable out of a particular fund, and for which the fund only and not the municipality is liable, are not within the inhibition of [the debt limitation] * * * ." 140 Or at 350.

It is generally held that there are limitations on the sources for payment into special funds. 56 Am Jur2d 695-96, Municipal Corporations § 648 (1971). Oregon has recognized special funds where payment into the fund was from revenues generated by the underlying property, *McClain v. Regents of the University,* 124 Or 629, 265 P 412 (1928); *Walsh Const. Co. v. Smith,* 272 Or 398, 537 P2d 542 (1975), and where payment is to

be made from excise taxes, *Moses v. Meier,* 148 Or 185, 35 P2d 981 (1934); Annotation, 100 ALR 900 (1936).

The sources for the county road fund are penalties, fees, federal funds (ORS 294.060, 294.065) and an ad valorem tax (ORS 368.705(1)). The county road fund may also receive funds transferred from the general fund, ORS 294.450.

We are not persuaded that the county road fund fits within either of the two types of special funds recognized in Oregon. While the Supreme Court expanded the revenue bond category of special funds in *Walsh Const.* to allow appropriations of general revenues on a voluntary basis to meet a moral obligation, in this case little, if any, of the revenue from the subject property goes into the county road fund.

Defendant Hospital, in its brief, argues that the present transaction is not distinguishable from the scheme approved in *Moses v. Meier, supra.* In *Moses,* the Oregon Supreme Court held that an integrated statutory scheme which allowed the State Unemployment Relief Fund to issue certificates of indebtedness payable from revenues derived from the manufacture, sale, distribution, taxing or licensing of alcoholic beverages did not violate the debt limitation provision because the certificates were payable solely from the liquor fund and did not constitute a general obligation of the state. There is considerable merit to defendant Hospital's contention. The opinion in *Moses* would appear to allow the special fund device whenever the obligated entity purports to limit its liability to the fund in question. Read expansively, *Moses* extends the special fund concept farther than any case we have found in any jurisdiction. Indeed, the case would seem to fulfill the prophecy of George H. Williams at the Constitutional Convention in 1857 when, in opposition to the debt limitation, he predicted that:

> " * * * Let us adopt a constitution of this kind, and the necessity of the age [will] force us to violate it, or call another convention and abrogate it. No state in the

Union [has] gone so far as we [have], yet some of them [have] been forced by the wants of their people to either ride over their fundamental law or take a backward step. So it will be with Oregon." The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857, p 272 (C. Carey ed 1926).

*Moses v. Meier, supra,* has been variously cited for the notion that obligations payable from a special fund created by the imposition of fees, penalties or excise taxes are not debts within the constitutional debt limitation, *see,* Annotation, 100 ALR 900 (1936), and for the proposition that a fund created by statute is within the special fund doctrine, *see,* Comment, *Constitutional Debt Limitations—Are Highway Authority Obligations "Debts" of the State?,* 44 Ky L J 227, 230 (1956).

■ We think that whatever may be the limits of *Moses v. Meier, supra,* this case is not within its purview. Here, unlike *Moses,* the County simply tied its obligation to a pre-existing fund, a fund which was not designed to carry the particular transaction and which, although the point was neither raised nor briefed by the parties, appears to involve an unauthorized expenditure of the county road funds. *See,* ORS 368.551, 368.705(2) and 368.710. We note also that the general rule allowing penalties, fees and excise taxes to feed a special fund, which is not a unanimous rule, *see, e.g., Crick, County Judge v. Rash,* 190 Ky 820, 229 SW 63 (1921), has not been extended to include ad valorem taxes. We are not convinced that the distinction drawn in the cases from other jurisdictions between ad valorem and excise taxes in the context of the special fund exception is viable in Oregon, but the entire concept of a special fund exception to the debt limitation is a judicial gloss and we see no basis for extending it here.

We conclude that the assumed contract obligation was a debt in violation of the debt limitation of Art XI,

§ 10, of the Oregon Constitution.[1] It follows that this case must be reversed and remanded to the trial court. We do not reach plaintiff's assignments dealing with the County's asserted failure to comply with the provisions of the Local Budget Law.

On remand the trial court should consider the following: First and preliminarily is the issue of laches. This issue was raised by defendant Hospital in the trial court but was not presented for decision due to the disposition of the case. A second matter is the effect of the failure of plaintiff to join defendant Hospital's vendors under the prior contract as parties defendant in his complaint. The trial court should consider what is the appropriate relief, if any, available to the plaintiff under the present posture of this case.

Reversed and remanded with instructions.

---

[1] For a recent and instructive interpretation by our Supreme Court of the application of the parallel constitutional limitation against state indebtedness, *see, Martin v. Oregon Building Authority,* 276 Or 135, 554 P2d 126 (1976).