Argued May 6, reversed July 12, 1977

# TERRY, *Respondent,*
## *v.*
# MULTNOMAH COUNTY, OREGON et al,
*Petitioners.*
(TC A76 03 02897, CA 6406, SC 25117)

566 P2d 878

Martin B. Vidgoff, Deputy County Counsel, Portland, argued the cause for petitioner Multnomah County. On the briefs with him were George M. Joseph, County Counsel, and Gary J. Zimmer, Deputy County Counsel, Portland.

Leslie M. Roberts, Portland, argued cause for petitioner Portland Adventist Hospital. On the briefs with her was Clifford B. Alterman, of Kell, Alterman & Runstein, Portland.

Stan Terry, Portland, filed a brief in propia persona.

Orval Etter, Research attorney, Bureau of Governmental Research and Service, University of Oregon, Eugene, filed a brief Amicus Curiae, by invitation of the Oregon Supreme Court.

TONGUE, J.

**TONGUE, J.**

Plaintiff, as a taxpayer, brought this suit for a decree declaring the purchase by defendant Multnomah County of a golf course owned by defendant Portland Adventist Hospital to be void as in violation of the $5,000 debt limitation imposed by Art XI, § 10, of the Oregon Constitution. After motions for summary judgment by both parties, the trial court entered a judgment and decree dismissing the complaint. That judgment and decree was reversed by the Court of Appeals. 27 Or App 15, 554 P2d 1017 (1976).

We granted defendants' petitions for review because of our concern whether that court was correct in holding, among other things, that even though a county may have unappropriated funds in an amount sufficient to pay an obligation incurred by it, that obligation is nevertheless a "debt" within the meaning of Art XI, § 10, unless an "appropriation" of sufficient funds has been made to pay that obligation.[1]

The case was submitted on motions for summary

---

[1] In granting defendants' petitions for review this court requested that argument be submitted on the following two questions:

"1. Is a county's contractual obligation to make cash payments in future fiscal years a 'debt or liability' within the meaning of Oregon Constitution Art. XI, sec. 10, if, at the time the county incurs the obligation, it has on hand uncommitted funds in excess of the total contract obligation?

"2. If the county's possession of such uncommitted funds does not, of itself, prevent the contractual obligation from constituting a 'debt or liability' within the meaning of the constitutional provision, what is the appropriate budgetary action for the county to take to avoid the constitutional prohibition?

"a. Must there be a formal appropriation of funds to cover the entire contractual obligation at the time it is incurred?

"b. Do the statutes governing local government budgetary procedures permit an effective appropriation of funds in one fiscal year to cover cash payments to be made in future fiscal years?

"c. If an appropriation is not necessary under the Constitution, or would not be effective under the statutes, what other methods of earmarking or making provision for funds to cover future cash payments are available to Oregon counties?"

Argument was also requested on two additional questions which need not be considered because of the basis on which we decide this case.

judgment by both plaintiff and by defendants. The facts are not in controversy. Those facts, as they appear from the affidavits submitted in support of such motions, are briefly as follows.

Defendant Portland Adventist Hospital purchased as the site for a prospective hospital 230 acres of land in East Multnomah County known as the Glendoveer National Golf Course. The Hospital received a Certificate of Need for construction of the Hospital, which was also approved by the Multnomah County Planning Commission. That approval was then reversed by the Board of Commissioners of Multnomah County.

The Hospital and County then entered into the contract which is the subject of this suit, under which the County agreed to purchase that property from the Hospital for $3,000,000, of which $2,400,000 was to be paid upon the execution of the contract and the County, as the buyer, assumed an outstanding obligation owed by the Hospital for payment of $600,000 as the balance owed by it under an existing contract for purchase of the property from third parties. That balance of $600,000, with interest at four per cent per annum, was payable in two equal installments on September 17, 1975, and September 17, 1976, but with no limitations or penalties on prepayment.

According to uncontradicted affidavits, with supporting exhibits, submitted by the County in support of its motion for summary judgment, the $2,400,000 payable by the County upon execution of the contract came from two sources: $1,000,000 in funds which had been budgeted for that purpose in its 1974-75 fiscal year budget and $1,400,000 obtained by the County as an advance from the State of Oregon against future allocations from the State Highway Fund under ORS 366.525 to 366.540. That arrangement was held to be proper by the Court of Appeals (27 Or App 15, *supra,* at 18).

We agree with its decision on that issue. This leaves for consideration the validity of the contract provision under which the County undertook to pay the balance

of $600,000 on terms previously described. With respect to that issue, it should be noted that it is also uncontroverted, as stated in affidavits and supporting exhibits submitted by the County in support of its motion for summary judgment, that as of the date of the contract in dispute the County had a total of $2,619,407 in unappropriated monies or contingency funds which (in addition to the $1,000,000 already appropriated) could have been applied by it in payment of the obligations arising under the contract, including the obligation to pay the $600,000 balance.

Article XI, § 10, of the Oregon Constitution, provides that:

"No county shall create any debt or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000; provided, however, counties may incur bonded indebtedness in excess of such $5,000 limitation to carry out purposes authorized by statute, such bonded indebtedness not to exceed limits fixed by statute."

This court has said that such debt limitation provisions are "for the benefit and protection of the taxpayer, by requiring the municipal authorities to conduct its affairs substantially within the current revenues." *Brewster v. Deschutes County et al,* 137 Or 100, 106, 1 P2d 607 (1931). More recently, we said of a similar debt limitation upon the Oregon legislature in *Martin v. Oregon Building Authority,* 276 Or 135, 141, 554 P2d 126 (1976), that:

"* * * [O]ur provision 'was adopted by the people as a protection against burdensome and excessive taxation' and that it was intended 'to prevent exposing the sources of public revenue to potential hazard.' * * * Debt restrictions force the elected representatives of the people to operate the government within its means and remove the temptation to undertake projects on an enjoy-now, pay-later basis."

The primary contention by defendants in support of these petitions for review is that if at the time an obligation is created by the County it has sufficient

funds available to pay that obligation, there is no "debt" within the meaning of Art XI, § 10.

As we read the decision by the Court of Appeals, that court appears to hold that "[t]he issue in Oregon is not whether the county is solvent" (27 Or App at 19), but that this $600,000 obligation was a "debt" within the meaning of Art XI, § 10, even though there were sufficient unappropriated funds to pay that obligation, because there had been no *appropriation* of such funds for the payment of that obligation.

1. *The obligation was not a "debt" within the meaning of the Oregon Constitution because there were funds available to pay that obligation.*

According to 15 McQuillin, Municipal Corporations 343-44, § 4120 (1970:

> "If at the time the obligation is created, there is money in the treasury sufficient to meet a liability and which can be applied thereto when due, no indebtedness is incurred. Thus, if when a city makes a contract, for a filtration plan for example, it has on hand funds available, that is, sufficient in amount to meet its obligation under the contract as they mature, obviously no indebtedness is thereby created. It is a cash transaction. * * * But indebtedness is incurred, at least where the expense is other than an ordinary and current one, where the cash in the treasury is sufficient only in part. And the money must be in the treasury ready to pay when the debt comes into existence and not merely when it becomes due. * * *."

In Bowers, *Limitations on Municipal Indebtedness,* 5 Vand L Rev 37, 43 (1951), in discussing the term "indebtedness" for the purpose of such debt limitation provisions, it is stated that:

> "* * * The term * * * is quite uniformly held to mean 'net indebtedness' today."[2]

---

[2]Similarly, as stated in 64 CJS, Municipal Corporations 363, § 1849 (1950):

"While a few decisions hold that a limitation of municipal indebtedness refers to outstanding debts and not net indebtedness, it has generally been held that in computing the existing indebtedness of

The apparent rationale for such a "net indebtedness" rule is that the purpose of such a debt limitation provision is to protect the taxpayer by requiring cities and counties to conduct their operations substantially within current revenues. Thus, it is reasonable to infer that the framers of these constitutional provisions intended to place limitations only upon the actual indebtedness of municipal or county governments for which additional taxes must be levied in the future, and not upon the apparent indebtedness for which funds are presently available. *Cf. Williamson v. Aldrich,* 21 SD 13, 108 NW 1063 (1906), as quoted with approval in 2 Antieau, Municipal Corporation Law 15-92, § 15.45 (1973).

It is contended by the County that prior decisions by this court are in accord with the rule as stated in 15 McQuillin, *supra,* citing *Butler v. City of Ashland et al,* 113 Or 174, 182-83, 232 P 655 (1925); *Smith v. Jefferson,* 75 Or 179, 194-95, 146 P 809 (1915); and *Brix v. Clatsop County,* 46 Or 223, 231, 80 P 650 (1905).

It appears, however, from a reading of these and other decisions by this court, that while such decisions are in accord with such a rule to the extent that they are consistent with that rule, and have even quoted the rule as stated in McQuillin, *supra,* by way of dictum, this court has not yet expressly adopted that rule as one which has controlled its decision in any previous case.[3]

---

a municipal corporation a deduction may be made from gross indebtedness of municipal assets applicable to the payment of such indebtedness."

[3] In *Butler v. City of Ashland et al,* 113 Or 174, 182-83, 232 P 655 (1925), this court, in quoting from 5 McQuillin, Municipal Corporations 4722, § 2227 (1913), included the following quotations, among others:

"If there is money in the treasury sufficient to meet a liability, and which can be applied thereto when due, at the time the liability is created, no indebtedness is incurred."

In that case, however, the controlling issue was whether an obligation was

█ It is not entirely clear whether the "available funds" rule stated in McQuillin, *supra,* as construed by the County, is the same as the "net indebtedness" rule stated by Bowers, *supra.* According to a brief filed as amicus curiae by the Bureau of Governmental Research, however, the proper rule is one of "net debt" and both the rule as stated in McQuillin and the prior decisions by this court are consistent with that rule.[4] We agree that the proper rule for the purpose of determining whether the obligation is a "debt" within the meaning of the $5,000 debt limitation imposed by Art XI, § 10, of the Oregon Constitution, is one of "net indebtedness." That is, if a county's total indebtedness, including the obligation which is being challenged, does not exceed the assets which could be applied to discharge that indebtedness, there is no "debt" within the meaning of the Constitution.

█ We also believe that the application of that rule is controlling in the disposition of this case. As previously stated, this case was submitted for decision by motions for summary judgment by both plaintiff and defendants. In the affidavits attached to defendants' motions, it is stated that at the time of the execution of the contract in question, the County "had available at least $2,619,407 in contingency funds or unappropriated monies which * * * could have been applied toward the payment of the purchase price of Glendoveer National Golf Course." That amount was far in

---

payable out of a "special fund." Thus, the above quotation was dictum. In *Smith v. Jefferson,* 75 Or 179, 194-95, 146 P 809 (1915), it would appear that the rationale of the McQuillin rule is implicit as the basis for the decision by this court in that case. Such a rule is not expressly stated, however, and neither McQuillin nor any other legal authorities are cited in support of that decision.

In *Brix v. Clatsop County,* 46 Or 223, 231, 80 P 650 (1905), this court held invalid a contract for the construction of a courthouse and its recognition of such a rule was also dictum.

We have also examined other Oregon cases cited in the various briefs and find them to be not in point.

[4] *See also* 15 McQuillin, Municipal Corporations 395-97, § 41.39 (1970).

excess of the contract balance of $600,000. It also appears from exhibits attached to that affidavit that the County had "net assets" in excess of that amount. Plaintiff has made no contention to the contrary and has filed no affidavit contradicting defendants' affidavit. On the contrary, plaintiff's motion for summary judgment expressly stated that "there is no genuine issue as to any material fact."[5]

It follows, in our opinion, that the trial court did not err in entering its judgment and decree granting defendants' motions for summary judgment and dismissing plaintiff's complaint. For the same reasons it also follows, in our opinion, that the Court of Appeals was in error in reversing that judgment and decree and, in particular, in its holding that "[t]he issue in Oregon is not whether the county is solvent, * * *." 27 Or App at 19.

2. *No "appropriation" of funds for payment of the balance of this contract was required to satisfy the debt limitation requirements.*

As previously stated, the apparent basis for the decision by the Court of Appeals is that even though a county may at the time of the execution of such a contract have sufficient funds to pay the entire contract balance, unless there is also an *appropriation* of such funds for payment of that obligation, it is a "debt" within the meaning of Art XI, § 10, of the Oregon Constitution, citing *Salem Water Co. v. City of Salem,* 5 Or 29, 35 (1873), and *Multnomah County v. First Nat. Bank,* 151 Or 342, 50 P2d 129 (1935).[6]

---

[5] ORS 18.105(4) provides:

"* * * When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

[6] *Salem Water Co. v. City of Salem,* 5 Or 29, 35 (1873), is quoted as holding that:

It is contended by defendant County, however, that

"*Coos County v. Oddy,* 156 Or 546, 68 P2d 1064 (1937), and other authorities are to the contrary, and hold that the test of whether an obligation which comes due in a year after it is contracted violates Article XI, Section 10 is not whether there has been an appropriation for that obligation, but whether the contracting county has adequate available revenue on hand to meet the obligation at the time of incurring it."

We agree with that contention. Although *Coos County v. Oddy,* 156 Or 546, 68 P2d 1064 (1937), does not clearly hold that no appropriation is required, the cases and authorities previously cited and discussed hold that the test is whether there are sufficient funds *available* for payment of the obligation, not whether such funds have been *appropriated* for payment of the obligation. Although the existence of money in the treasury *unappropriated to other purposes* may be required, a formal appropriation is not required. *See* 15 McQuillin, *supra,* 102, § 39.34.

Furthermore, we do not read either *Salem Water Co. v. City of Salem, supra,* or *Multnomah County v. First Nat. Bank, supra* (cited by the Court of Appeals), as adopting a rule *requiring* the appropriation of such funds.[7]

Related to the question of whether funds must be

---

"* * * [I]f expenses are incurred by authority of the legislative department for some specified object, without any provision being made for the payment of such expenses as they accrue, they thereby create and become a debt against the State, within the meaning of the prohibitory clause. * * *"

[7] In *Salem Water Co. v. City of Salem, supra* n. 6, at 35, this court stated that rule only as "the theory adopted" in two California cases and went on to cite *Coulson v. The City of Portland,* 1 Deady 481, as holding that:

"* * * The fact that the ordinance appropriates money to pay these coupons, as they fall due, makes no difference. There is no magic in the legislative formula, 'There is hereby appropriated.' "

The court went on (at 36) to say that it did not "undertake to decide" the effect of an ordinance provision for appropriation of funds.

*Cf. Brix v. Clatsop County,* 46 Or 223, 230, 80 P 650 (1905).

[ 136 ]

"appropriated" is a further contention by the County that in this case this court should overrule its previous decision in *Brewster v. Deschutes County et al,* 137 Or 100, 1 P2d 607 (1931), in which it was held (at 106) that:

"* * * [I]n determining the amount of the debt or liability the *aggregate sum* and not the particular instalment is the decisive factor." (Emphasis added)

County says that such a rule "artificially escalates the time obligations vest and artificially inflates the amount of debt which is deemed to have vested" and, in addition, that such a rule is contrary to the weight of authority," citing 15 McQuillin, *supra,* at 392-93, § 41.38.

It is recognized by McQuillin, however, that there is a split of authority on this question. In *Brewster* this court (at 106-07) expressly rejected substantially the same contention as now made by the County, after reviewing its prior decisions on this subject. It may also be said of the "aggregate sum" rule as stated in *Brewster* that it is consistent with the purpose of Art XI, § 10, to provide protection to taxpayers by requiring a county to "conduct its affairs substantially within current revenues."[8] It may also be contended that the limitation imposed by such a rule provides substantially as much protection to the taxpayer as under a rule requiring "appropriation" of funds, as would have been the rule under the decision by the Court of Appeals.

In any event, we do not consider this to be an appropriate case in which to reconsider the "aggregate sum" rule, as previously adopted in *Brewster,* because in this case (according to the uncontradicted affidavits submitted in support of the motion of defendant County for a summary judgment), there were suffi-

---

[8] *Brewster v. Deschutes County et al,* 137 Or 100, 106, 1 P2d 607 (1931). More recently, in *Martin v. Oregon Building Authority,* 276 Or 135, 554 P2d 126 (1976), this court again referred, with apparent approval, to the "aggregate sum" rule as stated in *Brewster.*

cient funds on hand for payment of the total "aggregate" contract balance of $600,000.

Finally, at the time of oral argument the question was raised whether the same "unappropriated funds" could be used by a county as a basis for sustaining the validity of multiple obligations, each in an amount less than the amount of such unappropriated funds, but which, when combined, would exceed the amount of such funds.

With respect to that suggestion we consider it sufficient, for the purposes of this case, to point out that no contention is made by this plaintiff that such a state of facts existed at the time of the execution of this contract. Again, as previously stated this case was submitted on motions by both plaintiff and defendants for summary judgment based solely upon facts as set forth in the affidavits filed in support of such motions. Furthermore, such a suggested state of hypothetical facts would not satisfy the requirements of the "net indebtedness" rule, as adopted in this case.

For all of these reasons, the decision by the Court of Appeals is reversed.