In the Matter of the Petition of the
CITY OF BEAVERTON, WASHINGTON COUNTY,
OREGON, a municipal corporation.
For a Judicial Examination and Judgment of the
Court as to the Regularity and Legality of the
Proceedings of the Council of the City of
Beaverton Authorizing Certain Contracts and
as to the Validity of Such Contracts.

COLE et al,
*Respondents,*

*v.*

BAKER et al,
*Appellants.*

UMREIN et al,
*Appellants,*

*v.*

CITY OF BEAVERTON et al,
*Respondents.*

(85-0800C & 85-0492C; CA A38309)

727 P2d 171

Henry Kane, Beaverton, argued the cause and filed the brief for appellants.

Howard A. Rankin, Portland, argued the cause for respondents. With him on the brief were Rankin, McMurry, VavRosky & Doherty, and Katherine G. Georges, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

The issue in these consolidated appeals is whether the financing plan that the Beaverton City Council has approved for a new city government facility (the center) violates the debt limitation provision of the city charter and certain state statutes. Appellants seek review of the trial court's judgments holding the plan to be valid.[1] We affirm.

The financing plan is contained in a series of proposed contracts between the city and First Interstate Bank. The council has authorized the contracts, but they have not yet been executed. Under the contracts, the bank would issue and be obligated on certificates of participation (COPs), for purchase by private investors, to finance the construction of the center. The principal amount of the COPs may not exceed $13,000,000. There will be a lease-purchase arrangement between the city and the bank under which the city, as lessor of the center, will make rental payments to the bank over a 25-year period. The rental amounts will be calculated to retire the

---

[1] The council brought a proceeding under ORS 33.710 to ORS 33.720 to determine the validity of the contracts which embody the financing plan. Those contracts have been authorized by the council, but have not been executed. Plaintiffs Umrein *et al* brought a separate declaratory judgment action, contending that the financing plan is invalid. The two proceedings essentially present the same questions from opposite perspectives. The trial court conducted a plenary trial in the proceeding initiated by the council. After issuing its decision in that proceeding, the court entered a complementary judgment dismissing the Umrein action. These appeals are taken from the judgments in both proceedings. We use the term "appellants" to refer collectively to the parties seeking reversal of the judgments.

Appellants make three assignments of error other than the one we discuss in the text. They contend, first, that the trial court lacked subject matter jurisdiction over the proceeding brought by the council, because several terms of the proposed contracts remain to be finalized. Appellants conclude that, "[b]ecause essential elements of the purported [contracts] are absent, there is no ORS 33.710(2)(d) 'contract' to construe." We disagree. ORS 33.710(2) grants jurisdiction "for the purpose of having a judicial examination and judgment * * * as to the regularity and legality of," *inter alia:*

"(d) The authorization of any contract and as to the validity of the contract, whether or not it has been executed."

The purpose of that statute is to allow the legality of contemplated governmental actions to be determined before they are undertaken. Although the missing terms might be relevant in a proceeding to enforce the contracts, they are not relevant to the determination of the validity of the financing plan which the proposed contracts do define. The trial court had jurisdiction.

Appellants also assign error to the trial court's denial of a motion to compel production of documents and to its refusal to decide the cases by ruling on the plaintiffs' motion for summary judgment in the Umrein action. There is no merit to either assignment.

bank's principal and interest obligations to the COPs holders. After the bank's obligations on the COPs are discharged in full, the city may exercise its option to purchase the center.

The city will pledge certain real property, which has been declared surplus, to secure the rental payments. However, the city is not required by the contracts to appropriate funds for the payments. In other words, if the city chooses, it may stop appropriating funds for and may stop paying rent at the end of any budget year. In the event the city does so or is in default for other reasons, the bank will have recourse against (1) any current appropriations for the rent in the city's budget, (2) the pledged surplus property and (3) the center itself. However, the bank is specifically precluded from seeking a deficiency judgment against the city.

The trial court concluded that, given the bank's and the city's respective roles in the financing plan, the city has incurred no "debt" subject to the charter limitation,[2] because the city has no unconditional obligation to pay anything except funds which it might currently appropriate. *See DeFazio v. WPPSS,* 296 Or 550, 679 P2d 1316 (1984); *Martin v. Oregon Building Authority,* 276 Or 135, 554 P2d 126 (1976). The court also found, as a separate basis for its decision:

> "The court also accepts the testimony of the city's finance director and if there is a debt, there were sufficient unrestricted funds to pay for the debt at the time it was incurred. Under *Terry v. Multnomah County,* 279 Or 127 [, 566 P2d 878] (1977), no debt in violation of the Oregon Constitution, statutes, or city charter was incurred."

Appellants' principal assignment of error states:

> "The trial court erred in ruling that the financing arrangement * * * did not violate Beaverton City Charter Section 40 or any state law."

The parties devote most of their arguments to whether the

---

[2] Section 40 of the charter provides:

"A. Voluntary Floating Indebtedness. Except by consent of a majority of voters at an election, the city's voluntary floating indebtedness shall not exceed $25,000.00 at any one time.

"B. Bonded Indebtedness. Except as authorized by state law, the city shall not issue and sell general obligation or revenue bonds unless authorized by the consent of a majority of the voters at an election."

fact that the financing plan imposes no direct and unconditional obligation on the city to pay either the COP holders or the bank means that the city is not indebted for purposes of the charter limitation. We do not reach that question, because we consider the alternative basis for the trial court's ruling to be a narrower and independently sufficient basis for deciding the debt limitation issue.

In *Terry v. Multnomah County,* 279 Or 127, 566 P2d 878 (1977), the court concluded that, under the constitutional county debt limitation, Or Const, Art XI, § 10:

> "[T]he proper rule for the purpose of determining whether the obligation is a 'debt' within the meaning of the $5,000 debt limitation imposed by Art XI, § 10, of the Oregon Constitution, is one of 'net indebtedness.' That is, if a county's total indebtedness, including the obligation which is being challenged, does not exceed the assets which could be applied to discharge that indebtedness, there is no 'debt' within the meaning of the Constitution.

> "We also believe that the application of that rule is controlling in the disposition of this case. * * * [A]t the time of the execution of the contract in question, the County 'had available at least $2,619,407 in contingency funds or unappropriated monies which * * * could have been applied toward the payment of the purchase price of Glendoveer National Golf Course.' That amount was far in excess of the contract balance of $600,000. It also appears from exhibits attached to that affidavit that the County had 'net assets' in excess of that amount." 279 Or at 134.[3]

In view of the court's conclusion in *Terry,* the key question in this case is whether the city's total financial obligation in connection with the center exceeds the sum of the funds which the city has appropriated directly for the discharge of the obligation, plus other unrestricted funds that the city can apply to its discharge.[4] The city's finance director testified that, at the time when the contracts were authorized,

---

[3] Neither party suggests, and we can conceive no reason, why the *Terry* "net indebtedness" rule is not the proper rule under section 40 of the Beaverton City Charter as well as under the constitutional county debt limitation provision. However, for reasons with which we disagree and will discuss, appellants question *Terry's* applicability to this case.

[4] Here, as in *Terry,* no argument is made that the city has other obligations which should be taken into account in applying the net indebtedness rule. *See* 279 Or at 138.

the city had unrestricted invested funds of more than $14,000,000 and that more than $1,000,000 had been appropriated for the center project. On the basis of that testimony, the trial judge found that "there were sufficient unrestricted funds to pay for the debt at the time it was incurred."

■ It is not entirely clear whether appellants seek to challenge the trial court's finding. They make no assignment of error regarding it which satisfies our rules. They do make arguments about *Terry* and its applicability to this case. In the course of those arguments, appellants raise points which pertain to the finding. However, if the arguments are intended to demonstrate error in the finding, they miss their target. Appellants' arguments that touch most directly on the finding are, first, that there was evidence from which a different finding *could* have been made about the amount of available revenue and, second, that the amount of the debt was unknowable. The first point is not persuasive, because there was also evidence to support the finding that the court did make, and appellants do not suggest that we should review the finding *de novo*.[5]

The second argument also is without merit. The essence of this argument appears to be that, as a *legal* proposition, *Terry* does not apply to cases where a debt has not yet been formally incurred and where the exact amount of the debt is unknown. Appellants maintain that this is such a case, because the eventual sum of the principal and interest on the COPs cannot be known at this time. However, they point to nothing in the record to support affirmatively their supposition that the amount of the debt was unknowable, and they do not assert or demonstrate that there was no evidence from which the court could find either the exact amount of the debt or that its maximum possible amount will be less than the available revenue. Appellants have not demonstrated that the finding was erroneous and, therefore, in the light of the *Terry* holding, the conclusion necessarily follows from the finding that the financing plan does not give rise to a net indebtedness and does not violate section 40 of the charter.

---

[5] We therefore need not decide whether our factual review would be *de novo* under ORS 33.720(1), which states that, generally, the practice and procedure in proceedings under it "shall follow the practice and procedure of an action not triable by right to a jury."

■　　We next turn to appellants' statutory arguments. They contend first that the arrangement between the bank and the city violates ORS 271.390, because that statute, as they read it, authorizes cities to enter into leases but does not authorize a city to enter into lease-purchase contracts. They do not read the statute correctly. It expressly allows cities to enter into "leases under an optional contract for purchase."

■　　Appellants argue next that ORS 271.310 does not authorize the mortgaging of public property. Assuming that to be so, we fail to see the point, because the statute certainly does not prohibit mortgages. It says nothing about them. Any mortgage arrangements that the financing plan entails are within the city's authority under the general grant of powers conferred by sections 4 and 5 of its charter. *See Davidson Baking Co. v. Jenkins et al,* 216 Or 51, 337 P2d 352 (1959).

■　　Appellants contend that the transfer to the bank of the old city hall site, which is the future site of the center, violates ORS 271.310(3), which provides, in part:

"Real property needed for public use by any political subdivision owning or controlling the property shall not be sold, exchanged, leased or conveyed under the authority of ORS 271.300 to 271.360 * * *."

The city hall offices have been moved to a new location, pending the construction of the center. The city argues that the council, "acting within its legislative discretion, determined that the site property is not now 'needed for public use.' " We conclude that the council had the authority to make that decision. *See Lane v. City of Prineville,* 49 Or App 385, 389, 619 P2d 940 (1980).

In their reply brief, appellants point to certain other statutes, not discussed in their opening brief, which they maintain the city has violated. We decline to consider arguments first made in the reply brief.

Affirmed.